Jeannine STRICKLAND, Appellant,

v.

Herbert J. COLEMAN, Appellee.

No. 01–90–00205–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 7, 1991.
Rehearing Denied Feb. 27, 1992.

Ronald G. Wiesenthal, Anthony B. Schram, Houston, for appellant.

Wilson Pahil, Houston, for appellee.

Before MIRABAL, DUGGAN and O'CONNOR, JJ.

## OPINION

MIRABAL, Justice.

This is an appeal, after a bench trial, from a judgment for appellant-plaintiff for one-half the face value of a promissory note, $5000 in attorney's fees, and post-judgment interest.

Appellant, Jeannine Strickland, in 22 points of error, contends the trial court erred in rendering judgment for less than the face amount of a promissory note, the stated interest, and attorney's fees as set out in the note, and in denying appellant's requested additional findings of fact and conclusions of law. Appellee, Herbert J. Coleman, in a cross-point of error, contends that the trial court erred in awarding Strickland attorney's fees of $5000.

Strickland was the owner of Aid Bail Bonds, and often arranged bail for clients of Coleman, who was an attorney. On the occasion that is the basis of the lawsuit, Coleman requested a bond of $10,000 for a Mexican national charged with murder. Strickland testified that, because of the high risk involved, she arranged bail only after Coleman executed a promissory note for the bond amount of $10,000. The client failed to show up, the bond was forfeited, and demand was made on Coleman. Coleman refused to pay the full amount of the note, so Strickland filed suit.

Coleman testified that, when the note was made, he assumed there would be shared liability on the note, as there had been on previous bonds arranged with Strickland's son, Glen. Coleman identified the signature on the note as his, and testified he had no reason to believe Strickland had not paid the full amount of the bond upon forfeiture. He identified the demand letter sent to him by Strickland's attorney. Coleman said he had not read the promissory note before he signed it because he

understood, based on his prior dealings with the company, there would be 50 percent liability on his part. Coleman's agreement with the bond company had been a "50/50 deal on every bond where we split the fee."

Exhibits admitted into evidence included the following notes signed by Coleman:

—the subject 9/23/81 promissory note in the amount of $10,000 plus cost, securing a $10,000 bond;

—a 3/25/80 promissory note in the amount of $30,000 plus cost, securing a $30,000 bond. Next to Coleman's signature is the notation "½ of $30,000" (the other signatory on the note was Coleman's client who received the bond);

—a 5/12/80 promissory note in the amount of $10,000 plus cost, securing a $20,000 bond;

—a 7/5/80 promissory note in the amount of $2500 plus cost, apparently securing a $2500 bond;

—a 7/5/80 promissory note in the amount of $500 plus cost, apparently securing a $500 bond;

—a 7/10/80 promissory note in the amount of $500 plus cost, apparently securing a $500 bond.

Coleman testified he split the bond fee 50/50 with the bonding company on all these transactions, and his agreement was to pay half of the bond amount if the bond was forfeited. The only time he would sign a note was when he got half of the bond premium. The first bond forfeiture occurred in connection with the note sued on in this case.

Glenn Strickland testified he worked for Aid Bail Bonds in the past; his mother was the owner of the company; and she alone had ultimate authority in the company dealings, even though he and his brother made some decisions. He said the business relationship with Coleman was one of trust and respect, and that they had done business with him, no questions asked.

The trial court entered its judgment, finding Coleman liable for half of the note amount, plus attorney's fees. Strickland requested findings of fact and conclusions of law, which the trial court filed. Strick-

land filed a motion for a new trial and a request for additional findings of fact and conclusions of law. The trial court denied the motion and the request.

Strickland asserts, in her first 21 points of error, that the trial court erred in entering judgment for less than the full amount of the promissory note because the evidence was legally insufficient, insufficient as a matter of law, or factually insufficient. In point of error 22, she asserts the trial court erred in denying Strickland's request for additional findings of fact and conclusions of law. Coleman asserts, in a cross-point of error, that the trial court erred in awarding attorney's fees against him, and erred in its conclusion of law number four.

■■■ Because the first 21 points of error pertain to the findings of fact and conclusions of law by the trial court, they will be discussed together. In reviewing legal insufficiency points, we consider only the evidence tending to support the judgment, viewing it in the most favorable light, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all contrary or conflicting evidence. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1982). If there is any probative evidence, more than a scintilla, supporting the judgment, the point must be overruled and the judgment affirmed. *Texaco, Inc. v. Pennzoil, Inc.*, 729 S.W.2d 768, 787 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In reviewing "matter of law" points, the court considers all of the evidence, and if the converse of the finding is conclusively established, the point of error is sustained. *Holley v. Watts*, 629 S.W.2d 694, 696–97 (Tex.1982); *Ritchey v. Crawford*, 734 S.W.2d 85, 86 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■■■ Factual insufficiency exists when the only evidence supporting a vital fact finding is factually too weak to support it, or when considered with the evidence opposing the fact, the finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986). A motion for new trial is not necessary to raise either legal or factual sufficiency complaints in a non-jury trial. Tex. R.App.P. 52.

The disputed findings of fact are as follows:

5. When Plaintiff and Defendant shared the bond liability and the bond premium, Plaintiff's bonding company manager would ask the defendant to execute a promissory note as evidence of that shared bond liability.

6. On numerous occasions the promissory note used as evidence of shared bond liability did not accurately reflect the correct amount of Plaintiff's bond liability.

7. That Plaintiff was assured by the bonding company manager, Glenn Strickland, that regardless of the face amount of the promissory note, all parties knew the purpose of executing a promissory note and that all parties knew the actual amount of the Plaintiff's liability on the bonds was to be fifty percent of the face amount of the bonds.

. . . .

9. That if it had not been for the representations of the bonding company manager, Glenn Strickland, that regardless of the face amount of the indemnity agreement, all parties knew the actual amount of Plaintiff's liability on the bonds was to be fifty percent of the face amount of the bonds, Defendant would not have executed the indemnity agreement which forms the basis of Plaintiff's claim in this law suit.

10. That at the time of making such representations to Defendant, Glenn Strickland was acting as the agent of Plaintiff.

11. That the indemnity agreement sued upon by Plaintiff was obtained through FRAUD to the extent that such agreement obligates the Defendant to pay more than $5,000.

12. That Defendant, HERBERT J. COLEMAN, is indebted to JEANNINE STRICKLAND, in the amount of $5,000.

13. That Defendant, HERBERT J. COLEMAN, made a timely tender of the sum of $5000 to the Plaintiff, JEANNINE STRICKLAND.

14. That the Plaintiff, JEANNINE STRICKLAND, refused to accept the sum of $5,000 so tendered to her by Defendant.

The evidence shows the parties had previously done business by splitting bond premiums and liability. Strickland testified that the fee she received on the $10,000 bond was $500. Coleman testified that the total bond fee charged the client was $1000, and he paid Strickland $500 of that fee, and he kept the other $500. Coleman signed a promissory note for $10,000 in connection with the case. There were promissory notes and bonds regarding other clients which reflected Coleman's one-half liability on the bonds in the event of forfeiture. Coleman said he only signed promissory notes when he split the bond premium 50/50 with the bonding company, and the agreement was always that he would be 50/50 liable for the bond amount in the event of forfeiture, regardless of what the note said. Glenn Strickland testified the face of the promissory notes often did not reflect an accurate statement of Coleman's liability, and the liability for a forfeited bond was often to be shared 50/50 by Coleman and the bonding company. Coleman testified he would not have signed the subject promissory note had it not been for the prior course of dealings with Strickland's bonding company. Coleman testified that he owed Strickland $5000 and had offered to pay that amount, but his offer had been refused.

A promissory note is a contract between the maker and the payee. *Mauricio v. Mendez,* 723 S.W.2d 296, 298 (Tex. App.—San Antonio 1987, no writ). In an action by a holder of a promissory note against the maker, where execution of the note has not been denied, the introduction of the note in evidence makes a prima facie case for the holder. *Shumway v. Horizon Creditcorp,* 768 S.W.2d 387, 389 (Tex. App.—Houston [1st Dist.] 1989, writ granted); *Gonzalez v. Nielson,* 770 S.W.2d 99,

102 (Tex.App.—Corpus Christi 1989, writ denied); *Clark v. Dedina,* 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. *Guaranty Federal Sav. & Loan Ass'n. v. Horseshoe Operating Co.,* 748 S.W.2d 519, 528 (Tex.App.—Dallas 1988), affirmed in part and reversed in part, 793 S.W.2d 652, 659 (Tex.1990); TEX.BUS. & COM.CODE ANN. § 3.307 (Vernon 1968).

■ This is a breach of contract case, albeit the contract is a promissory note. When, as we have here, the holder of the note is the payee and not a holder in due course, the payee holds the promissory note subject to all defenses available in an action on a simple contract. *North Town Nat'l Bank v. Broaddus,* 569 S.W.2d 489, 491 (Tex.1978); TEX.BUS. & COM.CODE ANN. § 3.306(2) and (3) (Vernon 1968). Therefore, evidence is admissible that tends to prove a defense to the action on the promissory note, such as want or failure of consideration, non-performance of a condition precedent, non-delivery, delivery for a special purpose, fraud in the inducement, or other defenses which would be available in an action on a simple contract. *Id.*

■ The evidence in the present case showed, and the trial court found, that the subject promissory note was not signed in a vacuum—it was not an isolated transaction. To determine the actual terms of the contract, the trial court considered not only the face of the promissory note, but also the prior course of dealings between the parties. The trial court considered all similar transactions to determine the actual agreement between the parties. Evidence of the routine practice of an organization is relevant to prove that the conduct of a person or organization on a particular occasion was in conformity with the routine practice. TEX.R.EVID. 406. Moreover, evidence of custom or course of dealing is admissible to prove or interpret the terms of a contract. *Mediacomp v. Capital Cities Communication,* 698 S.W.2d 207, 212 (Tex.App.—Houston [1st Dist.] 1985,

no writ); *Rosenstock v. Wheeler,* 310 S.W.2d 350, 354 (Tex.Civ.App.—Houston 1958, writ ref'd). In this context, the trial court found Coleman was indebted to Strickland for $5000, and that, to the extent Strickland insisted the subject note obligated Coleman to pay more than $5000, the note was fraudulent.

We hold that a complete review of the record reveals legally and factually sufficient evidence to support all the findings of the trial court.

The dissenting opinion disagrees with this holding, arguing that, under *Broaddus,* the unambiguous promissory note in this case cannot be varied or contradicted by extrinsic evidence. *Broaddus* involved a single transaction between the parties, represented by the one promissory note that was sued on. The maker's defense was alleged fraud in the inducement. The narrow holding of *Broaddus* is that "the mere representation by a payee to the maker that the maker will not be liable on the note does not constitute fraud in the inducement so as to be an exception to the parol evidence rule." 569 S.W.2d at 492. The *Broaddus* court specifically acknowledged that where a holder of a note is not a holder in due course, it holds the note subject to all defenses available in an action on a simple contract. 569 S.W.2d at 491. The particular defense asserted in *Broaddus* was fraud in the inducement, in a one-time transaction.

The present case involves a routine practice, a course of dealing between the parties, which is probative and admissible to prove the actual terms of the contract. Unlike the *Broaddus* defendants, Coleman's defense is that the contract obligated him to pay one-half of its face amount, not because he was told this when he signed the note, but because he and the bonding company often did business this way and knew this, based on their experience and course of dealings with each other. In the majority's opinion, the narrow holding in *Broaddus* does not control the disposition of the present case.

■ Once the findings of fact are sustained, we must review the legal conclu-

sions drawn from those facts, and the uncontroverted evidence, to determine their legal correctness. *Mercer v. Bludworth,* 715 S.W.2d 693, 693 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). We must determine whether the conclusions of law are supported by the evidence as a whole. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.]), *writ ref'd n.r.e. per curiam,* 699 S.W.2d 199 (Tex.1985). The trial court's contested conclusions of law were:

1. Due to the fraud practiced against the Defendant by the Plaintiff, Plaintiff JEANNINE STRICKLAND, is not entitled to recover the amount sued upon, i.e., $10,000.

2. Plaintiff is entitled to judgment against the Defendant in the amount of $5,000.

3. Plaintiff is not entitled to recover prejudgment interest from Defendant, since Defendant made a timely tender of the amount to which Plaintiff is entitled to recover.

Based on the summarized evidence, and the law already discussed, we find the record amply supports the trial court's conclusion of law that Coleman owed Strickland $5,000 in principal.

■■■■ The conclusion of law that Coleman owed no prejudgment interest was also correct, based upon the findings of fact and other conclusions of law. Coleman testified that upon receipt of the demand letter from Strickland's attorney, he attempted to pay the $5000 and Strickland's attorney refused it. Tender of the amount due and the subsequent refusal of that tender relieved Coleman of the liability for the subsequent interest, costs and attorney's fees. *Guaranty Bank v. Thompson,* 632 S.W.2d 338, 339 (Tex.1982); *Penny v. Kelley,* 528 S.W.2d 330, 332 (Tex.Civ. App.—Beaumont 1975, no writ). A formal tender of the amount due is excused where the creditor has indicated that he is unwilling to accept what is due in discharge of the debt. *Warrior Constructors, Inc. v. Small Business Investment Company of Houston,* 536 S.W.2d 382, 386 (Tex.Civ. App.—Houston [14th Dist.] 1976, no writ).

We overrule Strickland's points of error one through 21.

■■■■ Strickland's final point of error asserts that the trial court erred in denying the request for additional findings of fact and conclusions of law. The failure of the trial court to find additional requested findings is not reversible error if the record affirmatively shows no injury to the complaining party. *Wentz v. Hancock,* 236 S.W.2d 175, 176 (Tex.Civ.App.—Austin 1951, writ ref'd). We have reviewed the requested additional findings and conclude some are not supported by the evidence, some are contrary to the findings and conclusions already made by the trial court, and some cover uncontested facts. Therefore, we find the record affirmatively shows no injury to Strickland from the trial court's failure to file additional findings of fact and conclusions of law.

We overrule Strickland's point of error 22.

Coleman's cross-point of error asserts the trial court erred in rendering judgment for Strickland in the amount of $5000 for attorney's fees. Coleman correctly points out that the tender of the amount due upon demand, and the subsequent refusal of that rightful tender by Strickland, relieved him of subsequent liability for interest, costs, and attorney's fees. *Warrior Constructors, Inc.,* 536 S.W.2d at 386.

We sustain Coleman's cross-point.

The judgment is modified to delete the $5000 attorney's fee award against Coleman and, as modified, is affirmed.

O'CONNOR, J., dissents.

O'CONNOR, Justice, dissenting.

I dissent. We should reverse and render for Jeannine Strickland, the appellant.

Strickland, the owner of Aid Bail Bonds, often arranged bail for clients of Coleman, who is an attorney. In September of 1981, Coleman asked her to make a bond of $10,-000 for Garcia, a Mexican national charged with murder. Because Strickland considered the bond risky, she was reluctant to make the bond. Strickland testified she

agreed to post the bail only after Coleman executed a promissory note for the full bond amount of $10,000, which was introduced as Exhibit 1. She testified that if Coleman had refused to sign the note for the full liability, she would not have made bond on Garcia. Later, after Garcia did not appear for a court date, the bond was forfeited, and Strickland made a demand on Coleman on the note. Coleman refused to pay the note, and Strickland filed suit.

Coleman admitted he did not read the note before he signed it. Coleman testified that he regularly shared liability with Strickland on bonds. Yet, the only other bond on which he shared liability was for P. Roberts, for $30,000, which was Exhibit 5. When Strickland sent that promissory note to him, Coleman wrote in "one half of $30,000" next to his signature. Coleman testified that he did not share liability with Strickland on every bond over $1,000, but on some he did. Coleman testified that he called Glen Strickland, her son, before he signed the note in the present case, and Glen told him not to worry about it, that their arrangement was always just half. Glen Strickland denied having such a conversation with Coleman.

Glen Strickland, the son of Jeannine Strickland, is no longer employed by his mother. He testified he was not an owner of the bonding company, was not a manager, and his mother had the ultimate authority. Whenever there was an important decision to make, he said he deferred to his mother. On occasion, he testified, they would share liability with Coleman on the bond. The only bond that he could recall sharing liability was the $30,000 bond on P. Roberts, Exhibit 5. Before signing that note, Coleman added the notation that he was liable for only one-half.

The trial court and the majority are persuaded that Coleman's testimony that he assumed there would be shared liability on the note as on another bond, is enough to relieve him of the liability on this note. If this rule of law is adopted, no promissory note is safe from challenge, no matter how flimsy the testimony.

The majority focuses on Coleman's testimony that he always shared liability when he split the fee from the client. Even if Coleman shared liability when he split his fee from the client, it cannot help him avoid liability on a promissory note. The majority says "There were promissory notes and bonds regarding other clients which reflected Coleman's one-half liability on the bonds in the event of forfeiture." The only other promissory notes in this record are Exhibits 6, 7, and 8. When those notes were introduced by Coleman he did not say he shared liability on them. He merely identified them as notes he signed and said they were similar to the one in this lawsuit. The only promissory note in this record on which he shared liability was one that he noted "½" next to his signature. That would not relieve him of liability here, but would in fact support liability against him.

This case can be resolved by reading one case: *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex.1978). In *Broaddus*, the supreme court held that a maker who attempts to avoid the consequences of a promissory note must prove: (1) the payee represented he would not be liable; and (2) the payee by fraud, that rises to the level of trickery, artifice, or device, induced the payee to sign the promissory note. Here, we only have Coleman's contradicted statement that Strickland's agent told him he would only be liable for one-half the note, and Coleman's general assumption that he would not be liable for the full amount. In *Broaddus*, the maker of the note claimed that the agent of the bank told him that the other co-maker would have sole responsibility on the note, and that the bank would not look to either of them for repayment. *Id.* at 490–91. The supreme court held the allegations of the maker, even if true, did not constitute fraud in the inducement. *Id.* at 491; *see also Friday v. Grant Plaza Huntsville Assoc.*, 713 S.W.2d 755, 756 (Tex.App.— Houston [1st Dist.] 196, no writ). Here, we have no extrinsic evidence of fraud in the inducement that rises to the level of trickery, artifice, or device employed by the payee.

I would sustain the legal and factual sufficiency points of error challenging the above findings and render judgment for Strickland in the full amount of the note.