PRUDENTIAL SECURITIES,
INC., Appellant,

v.

Casey M. HAUGLAND, Charles
M. Haugland, and Helen
Haugland, Appellees.

No. 08–97–00320–CV.

Court of Appeals of Texas,
El Paso.

July 2, 1998.

Rehearing Overruled Aug. 19, 1998.

Joseph L. Hood, Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellant.

Corey Haugland, James, Goldman & Haugland, P.C., El Paso, for appellees.

Before BARAJAS, C.J., LARSEN and McCLURE, JJ.

## OPINION

McCLURE, Justice.

Prudential Securities, Inc. (Prudential) appeals from a judgment awarding damages to Casey M. Haugland, Charles M. Haugland, and Helen Haugland for Prudential's breach of a settlement agreement by reporting income to the Internal Revenue Service.[1] Prudential challenges the legal sufficiency of the evidence to show that it breached the settlement agreement or that any breach caused the Hauglands' damages. It also contends that the trial court improperly drew an adverse inference from Prudential's failure to present evidence at trial. We reverse and render judgment that the Hauglands take nothing.

### FACTUAL SUMMARY

Casey Haugland was employed by Merrill Lynch from 1981 until 1989. On December 1, 1989, he began employment with Prudential for a term of four years. As part of the employment contract, Prudential loaned Casey the sum of $103,903, which was treated by the parties as a signing bonus and which was paid in full to Casey at the commencement of his employment. The loan was evidenced by a promissory note. Repayment of the loan was also structured by the employment contract. Casey agreed to repay the loan in four equal installments of $25,976, plus interest, with the first installment being due on the first day of December 1990, and the remaining installments falling due on the first day of December in years 1991, 1992, and 1993. In turn, Prudential agreed to pay Casey what the employment agreement referred to as "transitional compensation" in the amount of $103,903, payable in four equal installments on the first day of December in years 1990, 1991, 1992, and 1993. These payments would not be made if Casey were in default in making any payments to Prudential, if he were terminated for cause, or if he were no longer employed by Prudential. Both Prudential and Casey made their respective payments in 1990, 1991, and 1992. Casey eventually became dissatisfied with his

job and voluntarily resigned on February 23, 1993. When Casey refused to pay the remaining installment of $26,408.65, Prudential instituted an arbitration action to recover the arrearage on the promissory note. Casey counterclaimed, alleging that he was wrongly induced to join Prudential and he sought to recover as damages the amount of money he would have earned had he stayed with Merrill Lynch. He also sought punitive damages in connect with a fraud claim.

While at Prudential, Casey managed the account of his parents, Charles and Helen Haugland. Another Prudential broker assumed management of the account when Casey left the company. Contending that this broker made an unauthorized trade on the account by selling one municipal bond fund and purchasing another, the senior Hauglands filed an arbitration claim seeking to recover as damages the capital gain realized from the trade and a redemption fee charged to them when the transaction was reversed.

Both arbitration proceedings were resolved by a settlement agreement. Prudential agreed to dismiss all claims against Casey arising out of his failure to pay the remaining installment due under the promissory note and Casey agreed to dismiss all claims he had against Prudential. As for his parents' complaints, Prudential agreed to pay the sum of $4,500 for Charles and Helen Haugland's agreement to withdraw all claims against Prudential and two of its employees. Pertinent to this case, the settlement agreement contains the following confidentiality provision:

> The parties hereto recognize and acknowledge that the content, nature, effect, terms and provisions of this Agreement are non-public and confidential in nature and therefore will use their best efforts to assure that the content, nature, effect, terms and provisions of this Agreement will be kept confidential and will not, without the prior written consent, be disclosed directly or indirectly, in whole or in part, by any of them to any third party or entity, provided

---

1. The opinion will refer to the Appellees collectively as "the Hauglands" or individually by their first names.

however, in the event they become legally compelled to disclose any information whatsoever concerning or related to this Agreement, prompt written notice thereof shall be given to each other party prior to the disclosure of any such information.

Prudential thereafter submitted a "Form 1099–Misc" to the Internal Revenue Service (IRS) and reported the $4,500 as miscellaneous income paid to Charles and Helen Haugland. The couple reported $4,500 as "other income" on their 1994 tax return and paid taxes on that income in the amount of $675. Similarly, Prudential submitted a "Form 1099–Misc" to the IRS and reported the sum of $26,408.65 as non-employee compensation paid to Casey Haugland for the tax year 1994. When Casey filed his 1994 tax return, he included a "Form 8275" in which he stated that the Form 1099 filed by Prudential was in error and he had requested that a corrected Form 1099 be filed. Casey did not respond to a 1996 request by the IRS for an explanation of his failure to include in his 1994 return the non-employee compensation reported by Prudential. On October 16, 1996, the IRS recalculated his 1994 taxes and assessed his tax liability as $14,338. As of the time of trial, Casey had not appealed this determination.

The Hauglands filed suit, alleging that Prudential had breached the confidentiality provision of the settlement agreement by reporting the income to the IRS. They also asserted fraud and negligence claims. Following a bench trial, the trial court found against the fraud and negligence claims, but ruled in favor of the Hauglands on their breach of contract claims. Consequently, the court entered judgment for Charles and Helen Haugland in the amount of $853.93 plus prejudgment interest. Judgment was rendered for Casey Haugland in the amount of $14,338 together with prejudgment interest, plus $1,000 as additional damages resulting from Casey's payment of tax preparation fees, plus another $6,632 as the "probable tax" resulting from this judgment.

## CAUSATION

In Point of Error No. One, Prudential alleges that the evidence is legally insuffi-

cient to establish that any breach of the settlement agreement resulted in damage to the Hauglands. The only damages claimed by and awarded to the Hauglands is the assessment of taxes by the IRS on the income received as a result of the settlement agreement. Prudential reasons that since the Hauglands failed to prove that they did not owe the taxes, the filing of the Form 1099s could not have caused any damages. We agree.

### Standard of Review

In considering a legal sufficiency or "no evidence" point, an appellate court considers only the evidence which tends to support the jury's findings and disregards all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Parallax Corp., N.V. v. City of El Paso*, 910 S.W.2d 86, 89 (Tex.App.—El Paso 1995, writ denied). If any probative evidence supports the jury's determination, it must be upheld. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (Tex.1951); *Parallax Corp., N.V.*, 910 S.W.2d at 89. We apply the same standard in reviewing the trial court's findings of fact and conclusions of law following a bench trial. In a bench trial, factual and legal sufficiency challenges to the trial court's findings of fact are reviewable under the same standards that are applied in reviewing evidence supporting a jury's answer. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Schwartz v. Pinnacle Communications*, 944 S.W.2d 427, 432 (Tex.App.—Houston [14th Dist.] 1997, no writ).

 The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach. *McCulley Fine Arts Gallery, Inc. v. "X" Partners*, 860 S.W.2d 473, 477 (Tex.App.—El Paso 1993, no writ). In order to recover compensatory damages, the plaintiff must establish that he suffered some pecuniary loss as a result of the breach of the contract. *Stewart v. Basey*, 150 Tex. 666, 245 S.W.2d 484, 486 (1952); *Braselton–Watson Builders, Inc. v. Burgess*, 567 S.W.2d 24, 28 (Tex.Civ.

App.—Corpus Christi 1978, writ ref'd n.r.e.). The evidence must show that the damages are the natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 687 (Tex.1981); *Winograd v. Clear Lake City Water Authority,* 811 S.W.2d 147, 156 (Tex.App.—Houston [1st Dist.] 1991, writ denied).[2] The absence of this causal connection between the alleged breach and the alleged damages will preclude recovery. *Nelson Cash Register, Inc. v. Data Terminal Systems, Inc.,* 671 S.W.2d 594, 600 (Tex.App.—San Antonio 1984), *aff'd,* 762 S.W.2d 744 (Tex.1988).

### No Presumption of Tax Liability

The Hauglands maintain that Prudential's action in filing the Form 1099s triggered a presumption that they owed taxes on the amounts allegedly paid them. Thus, they reason that if Prudential had not filed the Form 1099s, the presumption would not exist and they would not owe the taxes. We have reviewed the authorities cited by the Hauglands for the stated proposition that the filing of the Form 1099s created a presumption of tax liability. *See Welch v. Helvering,* 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *Westbrook v. Commissioner of Internal Revenue,* 68 F.3d 868 (5th Cir.1995). While both stand for the general proposition that an IRS assessment of taxes is presumptively correct and the taxpayer bears the burden of proving it erroneous, neither holds that the mere filing of a Form 1099 creates a presumption of tax liability. Indeed, a Form 1099, standing alone, is insufficient to support an IRS notice of tax deficiency and does not invoke the presumption of correctness. *See Portillo v. Commissioner of Internal Revenue,* 932 F.2d 1128, 1134–35 (5th Cir.1991). We con-

clude that the filing of the Form 1099s did not create a presumption of tax liability.

### Burden of Proof

The parties disagree on the core issue presented. Who shouldered the burden to establish that the Hauglands did not owe the taxes or that the monies received by them were not reportable as income?

### Illegality as Affirmative Defense

Characterizing Prudential's argument as raising an affirmative defense of illegality of the contract, the Hauglands assert that Prudential had the burden to prove that the Hauglands owed the taxes. Although Prudential took the position that the Hauglands' interpretation of the contract as absolutely prohibiting the reporting of the income to the IRS would render the confidentiality provision illegal, Prudential did not suggest or attempt to void the contract as illegal. Instead, Prudential maintained throughout the trial below and continues to argue on appeal that it was compelled by law to report the income[3] so that its filing of the Form 1099s was expressly permitted by the confidentiality provision. In short, we interpret the argument to be not that the contract was illegal but that because Prudential was required to report the income, there was no breach.[4] Thus, we do not agree that Prudential has relied on the defense of illegality.

### Plaintiff's Burden to Establish Elements of Claim

■ We turn now to the question of whether the Hauglands were required to show that they did not owe the taxes in order to establish the requisite causal connection between the filing of the Form 1099s and the assessment of tax liability against the Hauglands. Analogizing the Hauglands' claim to a

---

**2.** In making its argument, Prudential recites the correct causal standard stated in *Mead* but it also uses the phrase "proximate cause." While proximate cause must be proven in a negligence action, it is not, precisely speaking, the causal standard applied in a suit for breach of contract. *Winograd,* 811 S.W.2d at 156.

**3.** *See* 26 U.S.C. § 6041 (West Supp.1998)(requiring persons engaged in business to report income paid and name and address of the recipient).

**4.** Due to our resolution of the causation issue, we do not pass upon whether Prudential breached the confidentiality agreement by filing the Form 1099s with the IRS or whether a contract which prohibits a party from reporting income to the IRS is void.

malicious prosecution suit and to a legal malpractice suit by a convicted defendant, Prudential argues that the Hauglands were required to show that they did not owe the tax in order to establish that any breach of the settlement agreement caused the alleged damages. An essential element of a malicious prosecution claim is termination of the criminal proceeding in the plaintiff's favor, that is, acquittal of the charge. *Digby v. Texas Bank,* 943 S.W.2d 914, 918–19 (Tex. App.—El Paso 1997, writ denied). In the absence of such evidence, the plaintiff has failed to establish that the defendant's conduct in causing the commencement of the prosecution, as opposed to the plaintiff's criminal conduct, resulted in damages to the plaintiff. In the same manner, a convicted defendant cannot maintain a cause of action for legal malpractice unless he first establishes that the conviction has been overturned on direct appeal, through post-conviction relief or otherwise, because it is the illegal conduct of the defendant rather than the negligence of a convict's counsel that is the cause in fact of any injuries flowing from the conviction. *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 497–98 (Tex.1995).

We agree with Prudential that the Hauglands, in order to establish the requisite causation between the alleged breach, i.e., reporting the income, and the alleged damages, i.e., assessment of tax liability by the IRS, bore the burden of proving that they did not owe the taxes. If the income is in fact taxable, the Hauglands were obligated, independent of the filing of the Form 1099s, to include the income in their gross income and pay the required taxes. *See generally, Halle v. Commissioner of Internal Revenue,* 175 F.2d 500, 502 (2nd Cir.1949), *cert. denied,* 338 U.S. 949, 70 S.Ct. 485, 94 L.Ed. 586 (1950)(holding that the federal income tax system is one of self-assessment by the taxpayer); 26 U.S.C. § 61(a)(West Supp.1998)(definition of gross income); 26 U.S.C. § 6001 (West 1989)(requiring any person liable for tax imposed to keep records, render statements, and make returns); 26 U.S.C. § 6011 (West 1989 and West Supp.1998)(requiring any person liable for tax imposed to make a return or statement according to the prescribed forms and regu-

lations); 26 U.S.C. § 6012 (West Supp.1998)(persons required to make returns of income). Stated another way, it is not the filing of the Form 1099 which triggers the tax liability and the duty to include the income in the tax return; it is the taxable nature of the income. Consequently, we hold that in order to establish causation, the Hauglands must prove that these sums were not includable in their gross income and that it was the erroneous filing of the Form 1099s by Prudential, as opposed to the taxable nature of the income itself, which resulted in the erroneous assessment of the tax liability.

### Trial Court's Findings of Fact

The trial court found that Prudential's reporting of the $4,500 paid to Charles and Helen Haugland pursuant to the settlement agreement resulted in an additional tax liability of $853.93, and it awarded that sum of money to them as damages. The court made no explicit findings of fact that the receipt of this money by the senior Hauglands was not income for federal income tax purposes. Further, on their 1994 tax return, Charles and Helen Haugland claimed the $4,500 paid to them by Prudential as "other income." They did not allege or offer any evidence at trial to establish that this sum of money received by them was not income such that they did not have an obligation to report it or owe the additional tax liability. Similarly, the trial court found that Prudential's reporting of $26,408.65 as non-employee compensation to Casey Haugland resulted in an additional tax liability of $14,338, and it awarded that sum of money as damages, plus an additional $1,000 he paid for preparation of his 1994 tax return. *See* 26 U.S.C. § 61(a)(12)(defining gross income to include income from discharge of an indebtedness). Casey initially challenged the correctness of the Form 1099, but after he failed to respond to an inquiry, the IRS determined that he owed additional taxes in the sum of $14,338. Casey did not appeal that determination.

In one of its conclusions of law, the trial court stated: "Since no payment was involved for the forgiveness of debt with Casey Haugland and since under at least three applicable scenarios, Casey Haugland did not

have to recognize the forgiveness of indebtedness as income, Prudential did not have to report the forgiveness of indebtedness provided for in the Compromise, Settlement Agreement as income to the Internal Revenue Service." Although the trial court's reasoning is not entirely clear, it appears that the court relied on the rule that if the taxpayer establishes that a debt is not valid or is unenforceable, and a compromise results, the difference between the alleged amount of the debt and the amount of the settlement is not debt cancellation income to the debtor. *See Zarin v. Commissioner of Internal Revenue,* 916 F.2d 110 (3rd Cir.1990)(because gambling debt was unenforceable under state law, it was not a debt for which taxpayer is liable; consequently, cancellation of that debt did not result in income to taxpayer); *Exchange Security Bank v. United States,* 345 F.Supp. 486 (N.D.Ala.1972)(taxpayers in tax refund suit failed to prove that the debts did not exist or had been extinguished through prior payment; thus, cancellation of the indebtedness constituted income). The trial court had before it the pleadings filed in the arbitration claim by both Prudential and Casey as well as the settlement agreement. Casey admitted in those pleadings that Prudential advanced him the sum of $103,903 in the form of a loan and that he signed the promissory note. He claimed, however, that he was fraudulently induced to sign the note and enter into the employment contract. Likewise, Casey testified at trial that he signed the note and received that sum of money. He explained his fraud allegations by stating that Prudential promised him improved working conditions over Merrill Lynch but it failed to deliver. This evidence is insufficient to establish his defense of fraudulent inducement.

■ A promissory note is a contract between the maker and the payee. *Strickland v. Coleman,* 824 S.W.2d 188, 191 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Mauricio v. Mendez,* 723 S.W.2d 296, 298 (Tex.App.—San Antonio 1987, no writ). In an action by a holder of a promissory note against the maker, where execution of the note has not been denied, the introduction of the note in evidence makes a prima facie case for the holder. *Strickland,* 824 S.W.2d at

191; *Clark v. Dedina,* 658 S.W.2d 293, 296 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. *Strickland,* 824 S.W.2d at 191–92; TEX.BUS. & COM.CODE ANN. § 3.308 (Vernon Supp.1998). In order to establish his defense of fraud in the inducement, Casey was required to offer proof of a type of trickery, deceit, or device employed by the payee as well as a showing that the payee represented to the maker that he would not be liable. *Edlund v. Bounds,* 842 S.W.2d 719, 725 (Tex.App.—Dallas 1992, writ denied); *Clark,* 658 S.W.2d at 296. Casey did not testify that Prudential obtained his signature on the note through the use of trickery, deceit, or device nor is there any evidence that Prudential represented to Casey that he would not be liable. Consequently, he failed to establish the defense of fraud in the inducement. Because there is no evidence that Casey did not owe the debt or that the debt is unenforceable, the trial court's conclusion that the settlement did not result in debt cancellation income to Casey is unsupported by the evidence.

We recognize that the damages sought in the underlying arbitration proceeding included some claims for which recovery would be taxable and others for which recovery would not be taxable. Having determined, however, that as plaintiffs, the Hauglands bore the burden of proof in establishing what monies, if any, did not constitute "income" for federal taxation purposes, we need not segregate the claims here. Because the Hauglands failed to establish by legally sufficient evidence that Prudential's action in reporting the income, as opposed to the taxable nature of the income itself, resulted in the assessment of tax liability, they failed to sustain their burden of proving the requisite causation between the alleged breach of the settlement agreement and the assessed tax liability. Accordingly, Point of Error No. One is sustained.

Given our resolution of this point of error, we do not reach the remaining points of error. The judgment of the trial court is reversed and judgment is rendered that the

Hauglands take nothing on their breach of contract claim.