

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-22-00399-CV

———————————————————

ABERCROMBIE GROUP, LLC AND ABERCROMBIE HOLDINGS, LLC,
Appellants

V.

ROBERT CLARK; FLYNN FRANCIS & CLARK, LLP; AND FLYNN & FRANCIS,
LLP, Appellees

---

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-323585-21

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

Appellants Abercrombie Group, LLC and Abercrombie Holdings, LLC[1] appeal the trial court's order granting Appellees Robert Clark; Flynn Francis & Clark, LLP; and Flynn & Francis, LLP's[2] (collectively, the lawyers) motion for summary judgment. In a single issue, Abercrombie complains that the trial court erred by granting summary judgment in this legal malpractice case involving a promissory note (the Note) and a real estate development project. We will affirm.

## II. BACKGROUND

In 2007, Cary Clarke[3] formed Keller Winding Creek, LLC (KWC) for the purpose of developing approximately twenty acres of land into residential lots (the Property). In exchange for $400,000, Abercrombie received a 16% membership interest in KWC.

In 2009, Abercrombie wanted its money back and retained the lawyers to represent it in litigation against KWC; Founders Development Company, LP

---

[1]Because Abercrombie Holdings, LLC later transferred the subject promissory note to Abercrombie Group, LLC, we will collectively refer to Appellants as "Abercrombie."

[2]The pleadings alleged that attorney Clark "act[ed] at all times material hereto as an agent or representative of either the law firm of Flynn & Francis, LLP or Flynn, Francis & Clark, LLP."

[3]We will refer to Cary Clarke as "Cary" and Devane Clarke as "Devane" because both are involved in this litigation and share the same surname.

(Founders)—which held a 64% membership interest in KWC; The Devane Clarke Partnership, Limited (Devane Partnership)—which held a 12% membership interest in KWC; and Cary, individually. The remaining 8% membership interest in KWC was owned by Petroleum Financing, Incorporated. Cary was the president of Cary Clarke Homes, Inc., which was the General Partner of both KWC and Founders. Devane Clarke was Cary's father.

In an August 2009 "Unanimous Consent & Certificate of Resolution," the KWC members agreed that Founders would purchase the interest of Abercrombie "by way of promissory note with an original principal balance of $400,000.00 with an annual interest rate in the amount of 15%." Later that month, Founders as borrower executed the Note with Abercrombie as lender in the principal amount of $400,000 with an annual interest rate of 15%. The terms of payment were "[o]ne lump sum payment including principal and all unpaid interest upon completion of the [KWC] development project." The Property was not security for the Note. Rather, the Note reflected that "Security for Payment" was the "[p]ersonal guarantee of Cary Clarke."

Devane died in 2011. Thereafter, Cary began managing Devane Partnership, and the Property was transferred from KWC to Devane Partnership on April 8, 2013.

On August 27, 2013, Abercrombie—concerned about getting paid the money pursuant to the Note—contacted attorney Robert Clark about putting a lien on the Property. However, Clark advised that, because the Note was not secured by the Property, Abercrombie should instead "file a Notice of Agreement in the deed

records to put potential purchasers on notice." The Notice was filed in the deed records in September 2013.

Almost four years later, Abercrombie's representative sent an email to Clark stating that Abercrombie was "ready to sue [Cary] or at least start with a very stern letter." Ultimately, on November 28, 2017, the lawyers filed suit on behalf of Abercrombie against KWC, Founders, Devane Partnership, and Cary, individually (the underlying lawsuit). The lawsuit sought "to reform the [N]ote so that it [would be currently] due." According to the pleadings, "It was never the intention of the parties that the [N]ote would still not be due 8+ years after the [N]ote was signed." In addition to the Note reformation, the pleadings sought "imposition of a constructive trust upon the Winding Creek property or on any sales proceeds from its sale due to the fraud of Defendants," or alternatively, actual damages of $400,000 plus interest. At some point after the underlying lawsuit was filed, Abercrombie secured the services of attorney Caleb Moore to represent it instead of the lawyers. Moore settled the underlying lawsuit for the payment of $400,000 to Abercrombie by the defendants.

In February 2021, Abercrombie filed a legal malpractice lawsuit against the lawyers. In the lawsuit, Abercrombie alleged,

> Previous to the filing of the lawsuit, Defendant Robert Clark had prepared a Memorandum of Agreement made effective August 25, 2009 and acknowledged on September 6 and September 23, 2013, on behalf of Abercrombie Holdings, LLC. The Memorandum of Agreement gave notice of a Promissory Note payable to Abercrombie Holdings, LLC

4

from Founders Development, LP in the principal sum of $400,000 with interest at 15% per annum, dated August 25, 2009 ("the Note"). The Memorandum of Agreement states in part that the property in question (the Keller Winding Creek Development Project) was transferred to The Devane Clarke Partnership, Ltd. on April 8, 2013.

[ ] The Note provided in part that payment would be due in one lump sum upon "completion of the Keller Winding Creek Development Project." As of the date of the conveyance of the property comprising the Keller Winding Creek Development Project to The Devane Clarke Partnership, Ltd., it was clear that the Keller Winding Creek Development Project would never be completed by Founder's Development, LP.

Based on these facts, Abercrombie's pleadings contended that the four-year statute of limitations for breach of contract on the Note "began to run at the latest on September 6, 2013, when [Abercrombie] first discovered the conveyance of the [P]roperty to [Devane Partnership]." Abercrombie alleged that, because the statute of limitations had expired when the lawyers filed the underlying lawsuit, it was "forced to settle that case for the best terms possible" even though there was still owing "in excess of $800,000 in interest on the promissory note which could not be collected."

Abercrombie's contention in the legal malpractice lawsuit was that the lawyers "were negligent in their representation of [Abercrombie] by failing to file suit [on the Note] within the limitations period." Abercrombie further alleged that the lawyers were "independently liable for not maintaining or enforcing policies and procedures designed to prevent statutes of limitations from running without suit being filed." The lawyers answered the lawsuit and later filed their Traditional and No-Evidence Motions for Summary Judgment. Abercrombie filed a response to the motions for

summary judgment. The lawyers replied to the response. After a hearing, the trial court granted the traditional motion for summary judgment. Abercrombie appeals from this order.

### III. DISCUSSION

In one issue, Abercrombie contends that the trial court erred in granting summary judgment because there was "more than a scintilla of evidence on the challenged grounds such that summary judgment was improper." The lawyers respond that the trial court properly granted summary judgment because they conclusively negated the essential element of proximate cause for the legal malpractice claim.

### A. Applicable Summary Judgment Law and Standard of Review

For a traditional motion for summary judgment,[4] the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). To meet this burden, when the defendant is the movant, it must conclusively negate at least one essential element of each of the plaintiff's claims or conclusively prove all elements of an affirmative defense. *Stanfield v. Neubaum*, 494 S.W.3d 90, 96–97 (Tex. 2016); *see* Tex. R. Civ. P. 166a(b), (c).

---

[4]While the lawyers filed both no-evidence and traditional motions for summary judgment, the trial court's order stated that only the traditional motion was granted. Therefore, we do not address Abercrombie's arguments and objections regarding the no-evidence motion for summary judgment.

We review de novo the trial court's ruling on a motion for summary judgment. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citing *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)). When doing so, "[w]e review the summary judgment record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Eagle Oil & Gas Co.*, 619 S.W.3d at 705.

## B. Applicable Legal Malpractice Law

"To prove a legal malpractice claim, the client must establish that: (1) the lawyer owed a duty of care to the client; (2) the lawyer breached that duty; and (3) the lawyer's breach proximately caused damage to the client." *Rogers v. Zanetti*, 518 S.W.3d 394, 400 (Tex. 2017). "In every case, the plaintiff must supply a causal link between the attorney's alleged negligence and the client's damages." *Id.* at 404.

Proximate cause consists of (1) foreseeability and (2) cause in fact. *Windrum v. Kareh*, 581 S.W.3d 761, 777 (Tex. 2019). "Cause in fact (sometimes referred to as substantial factor) requires a showing that the act or omission was a substantial factor in bringing about the injury and without which harm would not have occurred." *Rogers*, 518 S.W.3d at 402. "Substantial" is used in its popular sense "to denote that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause." *Id.* (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex. 1991)). Cause in fact is "but-for" causation. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678–79 (Tex. 2017). Neither foreseeability nor cause in fact

7

can be established "by mere conjecture, guess, or speculation." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004).

Generally, in a legal malpractice case, expert witness testimony is required to rebut a defendant's motion for summary judgment challenging the causation element. *Starwood Mgmt., LLC*, 530 S.W.3d at 679. To defeat such a motion, an expert affidavit must be probative and raise a fact issue. *Id.* (citing *Ryland Grp. v. Hood*, 924 S.W.2d 120, 121–22 (Tex. 1996)). Conclusory affidavits are not probative. *Id.*

"When a legal malpractice case arises from prior litigation, the plaintiff must prove that the client would have obtained a more favorable result in the underlying litigation had the attorney conformed to the proper standard of care." *Rogers*, 518 S.W.3d at 401 (citing *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013)). Generally, this is shown by recreating the underlying case, or proving a "case-within-a-case." *See Rogers*, 518 S.W.3d at 401.

## C. The Lawyers' Summary Judgment Motion

In the legal malpractice lawsuit, Abercrombie alleged that the lawyers were negligent in failing to file claims within four years from the date that the Property was transferred from KWC to Devane Partnership. In their motion for summary judgment, the lawyers contended that Abercrombie could not meet the "case-within-a-case" element of proximate cause because (1) all evidence negated that the defendants in the underlying lawsuit anticipatorily breached the Note and (2) limitations on a breach of the Note never accrued because completion of the

8

development of the Property had not occurred. The lawyers argued that due to the condition precedent—"completion of the [KWC] development project"—the Note was not due and payable as there is no dispute that the completion of the project did not occur.

In support of their motion for summary judgment, the lawyers attached the following evidence:

- KWC Certificate of Filing;

- KWC Company Agreement;

- February 23, 2009 demand letter from attorney Clark to Cary;

- "Unanimous Consent & Certificate of Resolution" setting out the transfer of Abercrombie's membership interest in KWC to Founders;

- The Note;

- Tarrant Appraisal District owner's information showing Devane Partnership as owner of the Property by deed dated April 8, 2013;

- "Defendants' First Amended Response to Plaintiffs' Motion for Summary Judgment" in the underlying lawsuit;

- "Transfer of Earnest Money Contract" showing Cary as Managing Partner of Devane Partnership;

- "Special Warranty Deed" dated April 8, 2013, conveying the Property from KWC to Devane Partnership;

- August 26–27, 2013 emails between an Abercrombie representative and Clark;

- "Plaintiffs' Original Petition" in the underlying lawsuit;

9

- "Plaintiffs' Initial Disclosures" in the legal malpractice lawsuit;

- Cary's affidavit from the underlying lawsuit;

- Landscape and site plans for the Property; and

- City of Keller May 19, 2015 agenda.

In support of the lawyers' argument that limitations on the Note had not yet accrued because the project had not been completed, Cary's affidavit included information about the status of the project:

5. In August 2009, the Abercrombies approached me and demanded that [KWC] re-purchase Abercrombie Holding's share [in KWC]. The Abercrombies explained that they were attempting to get a business loan through First National Bank, but the bank told them that they needed to get [KWC] off of their balance sheet because it was a toxic asset.

6. The Abercrombies promised that if I approved their withdrawal as members and guarantee a Promissory Note, they would [ac]cept the note in lieu of a cash refund.

7. I explained to them that I would not accept a definite date on which to pay the note because the other members were now assuming all the risk to develop the land and the costs to maintain the land. I further explained that no one knows when the real estate market will come back or how conditions may change, therefore I would not accept a date certain to pay the note. . . .

. . . .

10. I have been trying to develop the land or have someone else develop it. Most recently, I have been working with Our Country Homes and the City of Keller. Due to the governmental shutdowns[,] that approval process is on hold.

10

11. I have never represented that I would not pay the note when the land is developed.

Attached to his affidavit was the landscape plan, conceptual site plan, and Keller City Council agenda regarding a zoning change for the Property. In further support of their motion, the lawyers highlighted the deposition of Abercrombie's representative, Christie Abercrombie, where she testified:

Q: Has anyone informed you or represented to you that the Keller Winding Creek development project is complete?

A: No.

Finally, they disputed that the term "completion" is susceptible to multiple reasonable interpretations.

## D. Abercrombie's Summary Judgment Response

In its response to the summary judgment motion, Abercrombie acknowledged that "[q]uestions exist in this case about when the Note was due and payable, and when the statute of limitations would have commenced to run." And it asserted that "[w]hat must happen for the payment obligation to be triggered is not defined and is therefore open to multiple interpretations." Further, Abercrombie pointed out that neither "completion" nor "Keller Winding Creek Development Project" is defined in the Note.

While acknowledging that it is a "generally correct statement of the law" that "an instrument payable upon the occurrence of conditions is generally not payable until the condition has occurred," Abercrombie contended that the lawyers never

11

warned it "of even the possibility of nonenforcement, of the specific limitation problems, of the possibility of repudiation, or of a need to seek reformation or clarification within 4 years." According to Abercrombie, the lawyers' "duty was to help the client understand the legal issues which [it] was not able to see for [it]self and find a way through them."

Abercrombie's summary judgment response included the following:

- 2013 and 2017 emails between Abercrombie's representative and attorney Clark;

- Excerpts from Clark's deposition;

- Excerpts from Moore's deposition;

- Excerpts from Christie Abercrombie's deposition; and

- Moore's declaration.

In its response, Abercrombie acknowledged that the land was "undeveloped" and, as of April 8, 2013, neither KWC nor Founders "was ever going to complete the [KWC] development project, much less develop it at all." In her deposition, Christie Abercrombie stated that she first learned of the transfer of the Property from KWC to Devane Partnership on August 27, 2013. In his declaration, Moore stated:

> To summarize my report in this case, I believe it was below the standard of care for [the lawyers] to fail to advise [their] client of the earliest possible date that a breach of contract claim would begin to accrue for purposes of the limitations period that it had to be filed within or be at risk of dismissal based on an affirmative defense on limitations. . . . The failure to track the limitation period and to include the claim for breach of the promissory note in a timely filed petition fell

below the standard of care because it was Abercrombie's best claim and a claim that should have been brought and still could have been brought, in my opinion, at least as of April 8, 2017 (the date of the conveyance), or probably, August 27, 2017 (the date Abercrombie became aware of the transfer[).]

[ ] The date by which payment was to be made was uncertain, unclear, vague, and ambiguous in the Promissory Note. It would therefore have been impossible for a lawyer to know exactly when the statute of limitations would run, and one instance in which it was likely that the statute of limitations would run would have been after the maker of the note, Founders Development LLC, no longer had an ownership interest in [KWC] and [KWC] no longer owned the land which comprised the so-called [KWC] development.

Abercrombie contended that once KWC transferred its ownership of the Property to Devane Partnership, it gave up control of the Property and no longer had the legal right to develop the Property, thus triggering the obligation to pay the Note in full.

### E. Analysis

On appeal, Abercrombie contends that the "accrual date for the statute of limitations is linked to the payment date in the promissory note" and "that payment date is based on undefined and ambiguous terms in the promissory note." Because an ambiguity exists, Abercrombie argues summary judgment on the legal malpractice claim was inappropriate. The lawyers contend that limitations never began running on the Note because completion of the KWC development project had not occurred. Moreover, they argue that while "Abercrombie mentions it settled its underlying claim to mitigate its damages, it does not argue that but for the Attorneys' alleged negligence, Abercrombie would have achieved a better settlement." Therefore, to

address these arguments under the "case-within-a-case" element of a legal malpractice claim, we must first examine the requirements to sue on a promissory note, including when a cause of action accrues on a suit on a note.

A promissory note is a contract between maker and payee. *Strickland v. Coleman*, 824 S.W.2d 188, 191–92 (Tex. App.—Houston [1st Dist.] 1991, no writ). Although a promissory note is a type of contract, a plaintiff suing on a promissory note need not prove the elements of a breach of contract claim to recover. *Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). Instead, the plaintiff must prove: (1) the existence of the note in question, (2) the defendant signed the note, (3) the plaintiff is the owner and holder of the note, and (4) a certain balance is due and owing on the note. *Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Suit on a debt must be brought no later than four years after the cause of action accrues. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3); *Manandhar v. Jamshed*, No. 02-11-00027-CV, 2011 WL 3835980, at *2 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op.). As a general rule, determining the accrual of a cause of action is a question of law. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 222 (Tex. 2003).

Defenses to recovery on a promissory note include "want or failure of consideration, *non-performance* of a condition precedent, non-delivery, delivery for a special purpose, fraud in the inducement, or other defenses which would be available

in an action on a simple contract." *Strickland*, 824 S.W.2d at 192 (emphasis added). "A condition precedent is one that postpones the effective date of the instrument until the happening of a contingency." *Litton v. Hanley*, 823 S.W.2d 428, 430 (Tex. App.—Houston [1st Dist.] 1992, no writ) (citing *Baker v. Baker*, 183 S.W.2d 724, 728 (Tex. 1944)); *see Thigpen v. Thigpen*, 563 S.W.2d 868, 871–72 (Tex. App.—San Antonio 1978, writ ref'd n.r.e.) ("The herein note was due on demand from the estate at the death of the maker. It did not mature[] and was not payable until this event happened and the statute of limitations did not begin to run until that date.").

Here, payment on the Note was conditioned on "completion of the [KWC] development project." The lawyers presented summary judgment evidence from Cary, developer of the Project, that he had "been trying to develop the land or have someone else develop it" but that the "process [was] on hold" due to the governmental shutdowns during the pandemic. Attached to Cary's affidavit was a landscape plan, conceptual site plan, and Keller City Council agenda regarding a zoning change for the Property. Further, Abercrombie's representative admitted that nobody had informed her or represented to her that the Project was complete.

While Abercrombie's response acknowledged that there were questions regarding when the Note was due and payable, it offered no evidence that the project had been completed. Rather, its expert, Moore, stated that the "date by which payment was to be made was uncertain, unclear, vague, and ambiguous." And although he believed that "the statute of limitations likely ran on the claim for breach

of the promissory note before [he] took over," he still concluded that "[i]t would therefore have been impossible for a lawyer to know exactly when the statute of limitations would run." Nevertheless, he stated,

> The risk of limitations beginning to run from the date of the conveyance of the property or over the discovery of it was significant because it could result in loss of all the money owing under the Note. Robert Clark's failure to recognize that risk and advise Abercrombie regarding the risk prior to the earliest possible date the limitations period could have expired was negligent and the cause of harm to Abercrombie, whose case was not strong enough to risk going to trial with the risk that [the] breach of contract claim was barred by limitations, which would result in the loss of $400,000.00 in principal and all of the accrued and owed interest.

While acknowledging that he settled the case for $400,000, Moore neither disputed the fact that the project had not been completed nor explained how he achieved the settlement, or achieved a worse settlement, if the statute of limitations had run. Rather, he merely stated that Abercrombie "mitigated" its damages by settling for $400,000. In addition, he failed to evaluate what the underlying lawsuit would have yielded by way of a judgment if the case had gone to trial. *See Elizondo*, 415 S.W.3d at 265 (noting that the expert "did not evaluate what the Elizondo case would have yielded by way of a judgment if the case had gone to trial"). And Moore failed to explain why the April 8, 2013 transfer of the property from one Cary-controlled entity—KWC—to another Cary-controlled entity—Devane Partnership— would have caused limitations to accrue on a Note which listed Founders as the only "borrower" on the Note but also included a personal guarantee by Cary.

16

This vague testimony fails to raise a material fact issue that the statute of limitations had in fact run or that filing the suit on the Note sooner would have caused a better result for Abercrombie. *See Rogers*, 517 S.W.3d at 130; *Riner v. Neumann*, 353 S.W.3d 312, 321 (Tex. App.—Dallas 2011, no pet.) ("A conclusory statement is one that does not provide the underlying facts in support of the conclusion."); *see also Elizondo*, 415 S.W.3d at 264 ("[A]n attorney-expert, however well qualified, cannot defeat summary judgment if there are fatal gaps in his analysis that leave the court to take his word that the settlement was inadequate."). Further, Moore failed to explain why he believed that the statute of limitations had "likely" run when it was uncontested that the Project had not been completed. *See Rogers*, 518 S.W.3d at 405.

To be competent summary judgment evidence, an expert's opinion must have a "demonstrable and reasoned basis on which to evaluate his opinion." *Id.* (quoting *Elizondo*, 415 S.W.3d at 265). "This basis must come in the form of an answer to the question 'Why': Why did the expert reach that particular opinion?" *Id.* (citing *Burrow v. Arce*, 997 S.W.2d 229, 236 (Tex. 1999)). "A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment." *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). The expert must substantiate his opinion with "objective, evidence-based support for his conclusions." *Greb v. Madole*, No. 05-18-00467-CV, 2019 WL 2865269, at *5 (Tex. App.—Dallas July 3, 2019, pet. denied) (mem. op.) (citing *Wal-Mart Stores, Inc. v. Merrell*, 313 S.W.3d 837, 840 (Tex.

2010)). Expert testimony that is speculative or based on assumed facts contrary to the evidence is also legally insufficient to prove the facts to which it is testifying. *Id.* (citing *Thompson & Knight LLP v. Patriot Expl., LLC*, 444 S.W.3d 157, 162 (Tex. App.—Dallas 2014, no pet.)). "Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof." *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Rsch. Corp.*, 299 S.W.3d 106, 122 (Tex. 2009).

As the movant on a traditional summary judgment motion, a defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of the plaintiff's cause of action. *Marteny v. Coon*, No. 09-19-00019-CV, 2020 WL 5666567, at *5 (Tex. App.—Beaumont Sept. 24, 2020, no pet.) (mem. op.). Here, the undisputed evidence established that the condition precedent found in the Note and addressed in the lawyers' motion for summary judgment—"completion of the [KWC] development project"—had not occurred, the cause of action on the Note had not accrued, and the statute of limitations had not begun to run. While on appeal, Abercrombie argues that "completion" could possibly mean "securing a site plan," "installing horizontal infrastructure," "installing the roads," or "selling the improved property to a developer," its summary judgment response failed to raise a material fact issue that *any* of these events had occurred.

And despite Abercrombie's contention that the condition precedent to enforcement of the Note was ambiguous, this issue was never addressed in the underlying lawsuit, and the limitations issue was never decided by the trial court.

18

Moore's report only summarily stated that "[b]ased on the limitations defense, the [trial court] more likely than not would have agreed that the Promissory Note was due, but then ruled that suit was filed too late." As the lawyers state, "[r]ather than wait for a proper accrual of its contract claims," Abercrombie "instead decided to sue its former lawyers because it was afraid of the *mere possibility* of an adverse ruling on limitations." Abercrombie's ambiguity argument, wherein it admitted not only that it did not know when limitations may have accrued but also that the trial court did not make such a determination, was tantamount to an admission that it could not show proximate cause in its legal malpractice case. *See Pierre v. Steinbach*, 378 S.W.3d 529, 535 (Tex. App.—Dallas 2012, no pet.) ("We would have to engage in impermissible inference stacking to reach [the appellant's] desired conclusion."); *see also Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (stating that proximate cause "cannot be established by mere conjecture, guess or speculation").

In its response to the lawyers' summary judgment motion on the legal malpractice claim, Abercrombie was required to raise a genuine issue of material fact regarding the causal link between the lawyers' negligence and its harm. *See Nelson v. Sheedy*, No. 05-16-01262-CV, 2018 WL 2434389, at *6 (Tex. App.—Dallas May 30, 2018, pet. denied) (mem. op.); *see also Rogers*, 518 S.W.3d at 402 ("As in other negligence cases, a legal malpractice plaintiff must prove that his or her lawyer's negligence was the proximate case of cognizable damage."). However, viewing the evidence in the light most favorable to Abercrombie, we conclude that its summary

judgment evidence failed to raise a material fact issue on the condition precedent to recovery on the Note—"completion of the [KWC] development project." Further, there were fatal gaps in its expert's analysis regarding why Abercrombie would have obtained a more favorable result in the underlying lawsuit had the lawyers conformed to the proper standard of care. *See Elizondo*, 415 S.W.3d at 264. Thus, we hold that the trial court did not err in granting the lawyers' motion for summary judgment on Abercrombie's legal malpractice claim.

We overrule Abercrombie's sole issue.

## IV. CONCLUSION

Having overruled Abercrombie's sole issue, we affirm the trial court's order granting summary judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: June 29, 2023

20