Roy H. **BRAY**, Appellant,

v.

The **CADLE COMPANY**, Appellee.

No. B14–93–00287–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 23, 1994.

Rehearing Denied July 21, 1994.

Darryl Fanelli, Houston, for appellant.

Farrell Bolz, Houston, for appellee.

Before SEARS and DRAUGHN, JJ., and JUNELL, J., sitting by designation.

## OPINION

SEARS, Justice.

Roy H. Bray appeals from an adverse judgment in appellee's suit for deficiency on a promissory note. Bray raises nineteen points of error. We affirm.

Bray executed a promissory note payable to Security Bank in the amount of $60,000.00. It was a 12–month note with interest only payable quarterly. The note recited on its face that it was secured by a Transfer of Note and Liens, covering a promissory note in the amount of $90,000.00, executed by Samuel and Barbara Hagopian and payable to Bray. Prior to the maturity date of his note, Bray made three quarterly interest payments. When Bray failed to pay the fourth quarter interest, the bank sought full payment on the note. Bray alleges that he advised Security Bank by telephone that he would pay off the entire loan if the bank would produce the original Hagopian note. However, the bank could not locate the original note, and Bray made no further payments.

Security Bank subsequently closed and the FDIC became the receiver. The FDIC also demanded payment. Bray wrote a letter to the FDIC asking that they accept the Hagopian note as payment in full of the Bray note. There were no further communications with the FDIC until a year later, when Bray learned the FDIC had sold all of Security Bank's notes, including the Bray and Hagopian notes, to appellee.

Appellee advised the Hagopians, who had been making note payments to Bray, to make future payments on their note to appellee. When the Hagopians did not make the next payment, appellee declared their entire note due and payable. After negotiations, appellee agreed to accept $45,000.00 from the Hagopians as payment in full on their note. Because Bray contended that the Hagopian note was worth $55,707.07, appellee credited Bray's balance on his note with $55,707.07, rather than the $45,000.00 appellee had actually collected. After deduction of this sum from the balance, appellee claimed that Bray still owed $25,928.53 on his note. Appellee demanded payment from Bray and, when Bray did not pay this amount, appellee filed the instant suit to recover the deficiency. Bray brought counterclaims of wrongful disposition of collateral, usury, conversion, tortious interference with contract, breach of contract, unjustifiable impairment of collateral, breach of duty to secure highest price,

and declaratory relief. Trial was to a jury. The jury found that appellee's collection of the amount due on the Hagopian note was not a "sale or other disposition" of the collateral and that Bray was liable to appellee for $20,568.53, plus attorney fees, pre-judgment and post-judgment interest, and attorney fees on appeal.

■ In points of error one through ten, Bray challenges the sufficiency of the evidence supporting the jury's damage findings. He claims that appellee did not conduct a commercially reasonable sale. Bray also contends he was given no prior notice of the sale or disposition of the collateral, and that the deficiency judgment is barred, as a matter of law, under TEX.BUS. & COM.CODE ANN. § 9.504. This section provides in pertinent part:

(a) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing.

. . . .

(c) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . .

TEX.BUS. & COM.CODE ANN. § 9.504(a), (c) (Vernon 1991).

Appellee responds that § 9.502, rather than § 9.504, applies to this case. Section 9.502 provides:

(a) When so agreed and in any event on default the secured party is entitled to notify an account debtor or the obligor on an instrument to make payment to him

whether or not the assignor was theretofore making collections on the collateral, and also to take control of any proceeds to which he is entitled under Section 9.306. TEX.BUS. & COM.CODE ANN. § 9.502(a) (Vernon 1991). Appellee also cites *Cullen Frost Bank v. Dallas Sportswear Co.*, 730 S.W.2d 668 (Tex.1987) in support of its claim that § 9.502 applies here.

The *Cullen* case deals specifically with accounts receivable, but its reasoning applies to other intangibles. Bray attempts to distinguish *Cullen* by arguing that it involves "general intangibles," which is a category of collateral that does not include instruments, such as the notes involved in the instant case. This is incorrect. *Cullen* involves "intangible collateral," and not "general intangibles." The term "general intangibles" is a catch-all for "miscellaneous types of contractual rights and other personal property...." TEX.BUS. & COM.CODE ANN. § 9.106, Comment (Vernon 1991). "General intangibles" do not include instruments such as the note involved in the instant case. *See* TEX.BUS. & COM.CODE ANN. § 9.106 (Vernon 1991). Unlike "general intangibles," "intangible collateral" can include documents, chattel paper, and instruments. *See* TEX.BUS. & COM.CODE ANN. § 9.106, Comment (Vernon 1991). A promissory note is an instrument. *See* TEX.BUS. & COM.CODE ANN. § 9.105(a)(9) (Vernon 1991). Thus, the promissory note involved in this case was intangible collateral and the *Cullen* court's discussion of intangible collateral applies to the facts of this case.

In *Cullen*, the bank held five promissory notes from Dallas Sportswear and part of the collateral pledged as security for these notes was Dallas Sportswear's accounts receivable. 730 S.W.2d at 668. When Dallas Sportswear defaulted on the notes, the bank directed them to deposit all receipts of collected accounts into a special account under the sole control of the bank so that these receipts could be applied to Dallas Sportswear's indebtedness. *Id.* Dallas Sportswear subsequently brought suit against the bank claiming no notice and commercially unreasonable disposition of the collateral. *Id.* at 669. The supreme court held that § 9.502 applied to the liquidation of the accounts receivable and

that § 9.502 does not require notice or commercial reasonableness. *Id.* The court offered the following explanation:

Section 9.502 provides a procedure for liquidation of intangible collateral separate and apart from § 9.504. The liquidity of intangible collateral and the ease of its disposition do not require the same safeguards of notice and commercial reasonableness required for disposition of tangible collateral. There are no valuation problems and the likelihood of disrupting the debtor's business is much lower when accounts receivable are collected than when tangible property is foreclosed upon and sold.

*Id.* The court noted that a creditor need not notify a debtor that it is proceeding directly against account debtors and thus, the court held that a creditor likewise need not provide prior notice when collection of the accounts is accomplished indirectly, as it occurred in *Cullen. Id.* at 669–70.

We find *Cullen* analogous to the facts of this case. Appellee held the Hagopian note as collateral for the Bray note. Under § 9.502, appellee was authorized to collect the amount owed on the Hagopian note and apply those funds to Bray's indebtedness. Furthermore, appellee was not required to provide prior notice of its collection of these funds. *Cullen,* 730 S.W.2d at 669–70.

Bray admits that § 9.502 could apply, but claims that three conditions to its applicability did not exist. These three conditions Bray believes must be met are: (1) there must be default; (2) appellee must be a holder or owner of the Hagopian note; and (3) appellee retained the collateral in satisfaction of the debt with Bray's concurrence. We disagree that these are conditions of § 9.502. Our reading of § 9.502 reveals that there must be default, the party exercising collection rights must be a secured party, and the collateral must either be accounts or an instrument.

Bray first asserts that appellee is neither the owner nor the holder of the Hagopian note because it was not in "possession" of the original note. Appellee responds that it was the owner of the note because the Transfer of Note and Lien was an absolute assignment

of the note absent any accompanying security agreement. The evidence also shows that appellee was a secured party.

We turn first to Bray's contention that appellee had no interest in the Hagopian note because it did not have "possession" of the original note. The record indicates that the original Hagopian note was misplaced by Security Bank. Security Bank maintained a copy of this note and the FDIC and appellee obtained subsequent interests in the notes by assignment. The copy of the Hagopian note was transferred to appellee because the original was lost.

 Even if an instrument is lost, stolen, or destroyed, an owner can recover on the instrument if he can establish his ownership, the terms of the instrument, and the reason the instrument cannot be produced. TEX.BUS. & COM.CODE ANN. § 3.804 (Vernon 1968). Although an owner can recover on the instrument if he meets the requirements of § 3.804, he cannot be a holder because he is not in possession of the note. TEX.BUS. & COM.CODE ANN. § 3.804, Official Comment (Vernon 1968). Thus, Hagopian, as the debtor on the Hagopian note, could have required appellee to meet the requirements of § 3.804 before obtaining payment, but he did not. It makes little sense for Bray to question appellee's right to recover on the Hagopian note since the proceeds from that recovery reduced Bray's obligation by more than $55,-000.00. In any event, § 3.804 does not address a situation such as that presented here where the original note is missing, but the secured party is in possession of a photographic copy of the original note. Appellant had no right in or to the note because it was collateral for the appellant's note and appellant lost all rights in the collateral due to default.

██ The purpose of requiring possession of a note to perfect a security interest in that note is to provide notice that the note is encumbered. *In re Investors & Lenders, Ltd.*, 156 B.R. 145, 148 (Bkrtcy.D.N.J.1993). The only notice sufficient to advise all interested parties of a perfected security interest in an instrument is actual possession by the secured party. *Id.* To hold otherwise would permit a dishonest holder to assign the note

to one party and then negotiate the note to a different party. *Id.*

In *In re Investors & Lenders, Ltd.*, the debtor retained the original notes and the secured party held copies of these notes. *Id.* Because the debtor could have transferred the original notes to other parties unaware of the security interest in those notes, the court held that possession of copies failed to satisfy the notice purpose of the possession requirement. *Id.* Thus, the court found the secured party's interest unperfected and held that the debtor could avoid payment. *Id.*

In the instant case, it is undisputed that no one is in possession of the original Hagopian note. Thus, we do not have the notice problem present in *In re Investors & Lenders, Ltd.* Bray does not dispute that he transferred the original Hagopian note to Security Bank as collateral for the Bray note. The Bray note states that it is secured by the Transfer of Note and Lien covering the Hagopian note. The Transfer of Note and Lien states:

That ROY H. BRAY, a single man, (hereinafter called "Assignor"), the legal and equitable owner and holder of that one certain Wrap–Around Promissory Note (the "Note") in the original principal sum of $90,000.00, dated March 3, 1982, executed by SAMUEL V. HAGOPIAN and wife, BARBARA H. HAGOPIAN, payable to the order of Assignor ... for good and valuable consideration paid to Assignor by SECURITY BANK, a Texas banking corporation (hereinafter called "Assignee"), the receipt and sufficiency of which are hereby acknowledged, has TRANSFERRED, ASSIGNED, ENDORSED, GRANTED, CONVEYED and DELIVERED and by these presents does hereby TRANSFER, ASSIGN, ENDORSE, GRANT, CONVEY AND DELIVER unto Assignee all of the following, to-wit:

(a) The Note and all indebtedness now or hereafter evidenced thereby;

(b) All of the rights, benefits, privileges, liens, security interests and assignments owned, held, accruing and to accrue to, and for the benefit of, Assignor, under the Deed of Trust;

(c) All other liens, security interests, lien priority agreements, guarantees, collateral assignments, covenants, agreements, rights, benefits and privileges ... in anywise accruing or to accrue to the benefit of Assignor, in anywise in respect of the Note and any indebtedness now or hereafter evidenced thereby.

While Security Bank was in possession of the collateral (the Hagopian note), no written security agreement was required for a security interest to attach, TEX.BUS. & COM.CODE ANN. § 9.203(a)(1) (Vernon 1991), and the security interest was perfected upon Security Bank's *possession* of the Hagopian note. TEX.BUS. & COM.CODE ANN. §§ 9.304(a), 3.05 (Vernon 1991). The Transfer of Note and Liens indicates attachment of a security interest occurred and was perfected, originally, by possession of the original Hagopian note. Thus, there was sufficient evidence in the record to indicate that the original Hagopian note was lost by Security Bank. Furthermore, the terms of that note and its status as a security interest for the Bray note are clearly set forth in the Transfer of Note and Liens. Under these facts, we hold that Security Bank and its transferees were holders of the Hagopian note, despite their possession of a copy and not the original. Furthermore, the proper party to assert the defense of no possession of the original note is the debtor on the note, in this case Hagopian. Hagopian did not attempt to avoid his obligation on the note.

When the FDIC was appointed as receiver, it succeeded to all rights, titles, and powers of Security Bank with respect to the Bank's assets. 12 U.S.C.A. § 1821(d)(2)(A)(i) (West 1989). Upon the sale of certain notes to appellee, the FDIC assigned its interest in the Bray and Hagopian notes to appellee. We hold that appellee had a perfected security interest in the Hagopian note and could employ the collection procedures set out in § 9.502.

■ We turn now to the second condition to application of § 9.502 raised by Bray, that there was no default. We agree with Bray that default is a prerequisite to applicability of § 9.502. Bray contends that he was ready, willing, and able to pay off the Bray note but he required that the bank, FDIC or appellee must first give him the Hagopian note. Appellant fails to recognize that the debt must be paid *before* the collateral is returned. Appellant incorrectly contends that "tender is excused" under these facts.

■ Tender is an *unconditional* offer by a debtor to pay a sum not less than the full amount due on a debt or obligation. *Arguelles v. Kaplan,* 736 S.W.2d 782, 784 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.). The burden of proving a valid tender is on the party asserting it. *Id.* A formal tender is excused where the creditor has indicated he is unwilling to accept what is due in discharge of the debt. *Strickland v. Coleman,* 824 S.W.2d 188, 193 (Tex.App.—Houston [1st Dist.] 1991, no writ). The effect of tender of the amount owed is that it stops the accrual of interest on the debt. *Arguelles,* 736 S.W.2d at 784.

The only evidence of "tender" is Bray's "oral offer" to Security Bank and to the FDIC to pay off the note; there is no written offer of tender. Bray testified that he offered to pay the debt, but required the original Hagopian note be returned to him so that he could sell it and pay off his note. Although there is no evidence of Bray's offers to pay off the note other than his own testimony, there are letters in the record from Bray to the FDIC and to appellee stating that Bray *could not pay off the note,* and asking the FDIC and appellee to accept the Hagopian note in full satisfaction of his obligation. It is unreasonable to believe that a secured party would release the only collateral it had in the belief that Bray could sell it, and in the hope Bray would turn over the proceeds from such sale. We hold that no "tender" occurred.

■ Bray finally claims the evidence shows that he was never afforded an opportunity to object to retention of the collateral in satisfaction of the debt or to redeem the collateral. Under TEX.BUS. & COM.CODE ANN. § 9.506, a debtor may, at any time before the secured party disposes of the collateral, redeem the collateral "by tendering fulfillment of all obligations secured by the collateral...." Appellee gave Bray the opportunity

to pay the debt, but Bray never made any payment. Thus, we do not find this section applicable. We overrule points of error one through ten.

[13] In point of error eleven, appellant contends the jury's answers to questions one and ten are irreconcilable. In response to question one, the jury found that Bray owed appellee $81,698.60 under the note. In response to question ten, the jury found that, as of February 21, 1991 (date of maturity), Bray owed appellee $20,568.53.

[14] When a party claims conflicting jury answers, the reviewing court must reconcile apparent conflicts "if reasonably possible in light of the pleadings and evidence, the manner of submission, and the other findings considered as a whole." *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex. 1980). These answers are reconcilable, as Bray recognizes in his brief at page 33, because the answer to jury question ten, $20,-568.53, is the *deficiency* sought by appellee (after deduction of the amount collected on the Hagopian note), less $5,360.00 in interest Bray had previously paid. There is no conflict in the jury answers. We overrule point of error eleven.

In points of error twelve through fourteen, Bray challenges the jury finding that appellee's settlement of the Hagopian note was not a "sale or other disposition" of appellee's interest in the note. Bray contends that if the settlement is a disposition within the meaning of sections 9.504 and 9.505 of the Texas Business and Commerce Code, appellee is barred from obtaining a deficiency absent the statutorily required prior notice. Bray also argues that the collection of payment on the note was a disposition of the collateral that constituted conversion of Bray's rights in the collateral. We need not address these points because we have already held that § 9.504 is inapplicable to this transaction.

In point of error fifteen, Bray challenges the jury award of damages on the ground that, as a matter of law, the evidence shows a tender of performance, or a legal excuse for not tendering performance, based on the failure to produce the Hagopian note. In point of error sixteen, Bray challenges the evidence supporting the jury's answer to question ten, and claims the evidence was sufficient to show "tender of performance." In points of error seventeen and eighteen, Bray further contends that he was entitled to judgment as a matter of law on his claim of usury because appellee demanded interest during a period which was free of interest. All of these points rest on Bray's claim that he made an offer to tender performance which appellee refused. We have already held, under our discussion of points of error one through ten, that Bray did not conclusively establish tender of performance. Therefore, the points of error fifteen through eighteen are overruled.

[15] In point of error nineteen, Bray asserts the trial court erred in overruling his motion for judgment n.o.v. on his counterclaim for attorney fees because the evidence shows that the suit arose out of a contract and the evidence shows that appellee breached that contract. The "contract" to which Bray refers is the implied obligation to dispose of collateral in a commercially reasonable manner. A duty to dispose of collateral in a commercially reasonable manner is an implied covenant in all contracts under TEX. BUS. & COM.CODE ANN. § 9.504 (Vernon 1991). *International Bank, N.A. v. Morales*, 736 S.W.2d 622, 624 (Tex.1987).

Jury question six asked whether appellee breached its contract with Bray "by failing to sell or otherwise dispose of its interest in the Hagopian Note in a commercially reasonable manner." The jury did not answer this question because a response to this question was conditional upon a negative answer to a prior jury question. Because the jury found that the settlement of the Hagopian note was *not* a sale or other disposition, the jury never reached questions three or six regarding the commercial reasonableness of the disposition.

We have previously held that § 9.504 was inapplicable to the instant facts and that § 9.502 controlled. Thus, we hold that the jury's answer to question two, whether the settlement of the Hagopian note was a sale or other disposition, was immaterial. Because § 9.504 is inapplicable, the question whether there was a breach of the implied

covenant to dispose of the collateral in a commercially reasonable manner, is also immaterial. Point of error nineteen is overruled.

We affirm the trial court's judgment.