Opinion issued February 28, 2003
 



 


 



In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00122-CV




ROBERT O. BREAULT, Appellant

V.

JOHN PSAROVARKAS, Appellee

* * * *

JOHN PSAROVARKAS, Appellant

V.

ROBERT O. BREAULT, Appellee




On Appeal from County Court No. 2
Galveston County, Texas
Trial Court Cause No. 45,339





MEMORANDUM OPINION

          Robert O. Breault (“Breault”) sued John Psarovarkas (“Psarovarkas”) for
nonpayment of a promissory note (hereafter referred to as “the Renewal Note”) made
in 1997 in the amount of $56,538.00. The Renewal Note was given for the unpaid
balance on a prior note (hereafter referred to as the “Real Estate Note”) made in 1994. 
Following a bench trial, the court entered judgment for Breault on the Real Estate
Note instead of the Renewal Note listed in the pleadings. After certain credits were
awarded to Psarovarkas for payments made, the court entered judgment for Breault
for damages, attorney’s fees, interest, and costs. 
          In five points of error, Breault asserts that (1) the court erred by entering a
judgment not supported by the pleadings; (2) there is no evidence, or the evidence is
insufficient to support a credit awarded in Psarovarkas’s favor; (3) the court erred by
crediting the full amount of Psarovarkas’s monthly payments against the principal
balance; (4) the court erred in crediting Psarovarkas based on an “I.O.U.”; and (5) the
court abused its discretion by refusing to hold an evidentiary hearing on a post-trial
motion for sanctions.
          In two points of error, Psarovarkas asserts that (1) the judgment merely
enforces the terms of the Real Estate Note and the court erred in the date prejudgment
interest commenced, and (2) a deposit into the registry of the court is not required to
halt post-judgment interest when the judgment creditor has refused an unconditional
tender. 
          We reverse and remand.
Background
          On June 17, 1994, Breault agreed to sell and Psarovarkas agreed to buy real
property located at 1026 FM 2094, known as “Skipper’s Café.” Psarovarkas paid a
$30,000 down-payment to Breault at the closing and signed a Real Estate Note for
$95,000 principal at 8% interest per annum. Although there is no evidence of a
written agreement outlining the detailed payment terms, it appears to be undisputed
that the Real Estate Note “wrapped” two notes into one. Breault had previously
purchased Skipper’s Café from Albert Gonzales and had agreed to make monthly
payments on a lien note that Gonzales owed to League City Bank & Trust (“the
Gonzales Note”). Psarovarkas was to pay the balance of the Gonzales Note in the
amount of $53,703, by making monthly payments of $1,525.00. The $41,300
remainder of the Real Estate Note (“the Breault Equity Note”) was to be paid to
Breault beginning on September 1, 1997 after the Gonzales Note was paid off.
          Psarovarkas made payments on the Gonzales Note until April 1996. At that
time, he wanted to purchase an adjoining lot for parking facilities. As part of that
purchase, Psarovarkas obtained financing from Frost Bank. Frost Bank paid the
remaining balance of $29,806.06 on the Gonzales Note, but did not pay off the
Breault Equity Note. In September 1997, Breault made demand upon Psarovarkas for
payment of the Breault Equity Note. A subsequent note, the Renewal Note, which
was highly disputed, was signed on September 25, 1997, and was to be a renewal of
the Breault Equity Note that had not been paid. Breault asserted that when he
confronted Psarovarkas regarding nonpayment of the Breault Equity Note,
Psarovarkas stated that he wanted to pay in one lump sum instead of monthly. In
response to that request, Breault presented Psarovarkas with the Renewal Note for
$56,538.00 that included all principal and interest earned to date on the Breault
Equity Note. Breault asserts that Psarovarkas signed the Renewal Note in the
presence of Lisa Welcome Doyle, a notary public. Doyle testified that she witnessed
Psarovarkas sign the document. Psarovarkas asserts that he did not sign the document
himself, but that he had his dishwasher sign the document merely to appease Breault,
and that he did not know that the document was legally binding or that Doyle was a
notary public. 
          Breault subsequently brought suit for nonpayment of the Renewal Note. 
Psarovarkas asserted that he purchased Skipper’s Café for $62,500.00, not the
$125,000.00 that Breault asserts was the sales price. 

          The trial court made the following findings of fact and conclusions of law:
Findings of Fact:
          1.       The parties contracted for Plaintiff [Breault] to sell and Defendant
[Psarovarkas] to buy a certain piece of property for the purchase price
of $125,000.00;
 
          2.       The date of sale and of the contract was June 17, 1994;
 
          3.       The parties agreed to an interest rate on the unpaid balance of the
purchase price of 8% per annum;
 
          4.       Psarovarkas paid $12,500.00 toward the purchase price of the property
at closing of the sale of property;
 
          5.       Psarovarkas paid an additional $30,000.00 cash to Breault toward the
purchase price of the property on the same day as the closing of the sale
of the property;
 
          6.       Psarovarkas made payments according to the original payment schedule
agreed to in June 1994 to a League City Bank & Trust account as
instructed by Breault totaling $28,975.00;
 
          7.       Psarovarkas paid an additional lump sum principal payment of
$29,806.00 toward the purchase of this property when he paid off
Breault’s underlying note in April of 1996;
 
          8.       Psarovarkas paid an additional $2,400.00 in taxes on the property to
clear the title in April 1996;
 
          9.       Breault agreed to credit the $2,400.00 tax payment to the balance owed
on the purchase price by Psarovarkas;
 
          10.     Taking all payments and credits into account, Psarovarkas owes a
balance of $21,319.00 on the purchase price of the property;
 
          11.     The reasonable and necessary attorney’s fees for prosecution of this case
are $10,470.00.

Conclusions of Law:
 
          1.       Payment of Breault’s underlying note due and owing on the subject
property constituted payment to Breault and constituted a credit to the
amount owed to Breault by Psarovarkas;
 
          2.       Prejudgment interest is due from the original date of the contract, June
17, 1994, through August 28, 2000, the date set for entry of judgment,
in the sum of $13,041.24;
 
          3.       Post-judgment interest is payable at the rate of 8% compounded per
annum from October 19, 2000 until paid;
 
          4.       Psarovarkas must pay costs of court.

Judgment not Supported by Pleadings
          In his first point of error, Breault complains that the trial court committed
fundamental error by entering a judgment not supported by the pleadings. Breault
sued Psarovarkas to recover the unpaid principal and interest on the Renewal Note
dated September 25, 1997. The Modified Final Judgment ordered that “Robert O.
Breault have and recover from John Psarovarkas, the sum of $21,319.00 actual
damages for the balance due on a promissory note dated June 17, 1994.” The note
referred to by the trial court in the judgment does not represent the note that Breault
sued upon. Psarovarkas agrees that the trial court entered a judgment that was not
supported by the pleadings, but asserts that the issues supporting the judgment were
tried by consent.
          The entry of judgment must conform to the pleadings. Barnett v. Barnett, 640
S.W.2d 776, 777 (Tex. App.—Houston [1st Dist.] 1982, no writ); Tex. R. Civ. P. 301. 
Issues not raised by the pleadings that are tried by the express or implied consent of
the parties shall be treated as if they had been raised in the pleadings. See Sage Street
Assocs. v. Northdale Const. Co., 863 S.W.2d 438, 445 (Tex. 1993); Tex. R. Civ. P.
67. However, in Sage Street, the court reiterated that issues are not tried merely by
the hearing of testimony thereon and that the record must be examined not just for
evidence of the issue, but evidence of trial of the issue. See id. at 446. 
          Psarovarkas contends that Breault cannot now complain of the court’s reliance
on the Real Estate Note because Breault introduced it into evidence, elicited detailed
testimony about the facts leading up to its execution, provided evidence regarding
down-payments and installment payments on the Real Estate Note, provided evidence
of other documents and discussions surrounding the transactions between the parties,
and failed to object when Psarovarkas presented evidence of same.
          After reviewing the record, we find that the issue of nonpayment of the Real
Estate Note was tried by implied consent. The 1994 Real Estate Note and the 1997
Renewal Note are both in support of the same transaction—the purchase of Skipper’s
Café by Psarovarkas. According to the record, the vast majority of evidence
presented, both by witnesses and by exhibits, pertained to the 1994 Real Estate Note. 
Moreover, the record contains not just evidence of the issues applicable to the Real
Estate Note, but also evidence of trial of the issues. The parties fully argued the
following: the amount of the Real Estate Note, payments made and/or not made,
verbal agreements made by the parties regarding the Real Estate Note, and amounts
credited on the closing documents related to the Real Estate Note. After hearing this
evidence, the court ruled on the specific issues argued by the parties relating to the
Real Estate Note. 
          We find that the record amply supports evidence of trial of the issues
supporting the trial court’s judgment and overrule Breault’s first point of error.
Application of Credits
          Breault complains that the trial court erred in applying three different credits
to Psarovarkas. In his second point of error, Breault challenges the sufficiency of the
evidence to support a $12,500 down-payment credit. In his third point of error,
Breault complains that the trial court erred in crediting $28,975, the full amount of
Psarovarkas’s monthly payments, instead of deducting interest. In his fourth point
of error, Breault asserts that the trial court erred in crediting Psarovarkas with a
$2,400 credit based on Breault’s “I.O.U.”
Standard of Review
          When the trial court acts as a fact finder, we review its determinations under
the legal and factual sufficiency standards. In re Doe, 19 S.W.3d 249, 253 (Tex.
2000). In a no-evidence challenge, we conduct a legal sufficiency review. Lee Lewis
Const., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001). We review the evidence
in a light that tends to support the finding of the disputed facts and disregard all
evidence and inferences to the contrary. See id. If more than a scintilla of evidence
exists, it is legally sufficient. Id. More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by reasonable
minds about a vital fact’s existence. Id. at 782-83. We reverse the ruling for factual
insufficiency of the evidence only if the ruling is so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust. Minucci v.
Sogevalor, S.A., 14 S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.). 
$12,500 Credit
          In his second point of error, Breault asserts that the trial court erred by
crediting Psarovarkas for $12,500.00 against the 1994 Real Estate Note because there
is no evidence, or the evidence is insufficient to support the finding that Psarovarkas
paid the $12,500.00. 
          Viewing the evidence in a light that tends to support the findings and
disregarding all evidence and inferences to the contrary, the record reveals the
following:
          a.       The settlement statement from Stewart Title indicates a $12,500 down-
payment credit.
 
          b.       Judy Wheeler, vice-president at Stewart Title, was the closing officer for
the sale of property from Breault to Psarovarkas in 1994. Wheeler
testified that Stewart Title received instructions to list $12,500 as a
down-payment credit and that she understood that it had already been
transferred between the parties.
 
          c.       Psarovarkas testified that he paid a $12,500 down payment.
 
          d.       Breault testified that, although he didn’t receive the $12,500, if it was
paid, it would have been accounted for in the settlement papers.

Based on the above, we find that more than a scintilla of evidence exists to support
payment of the $12,500 by Psarovarkas and the evidence is therefore legally
sufficient. Although there was testimony from Breault that he did not receive the
$12,500, that does not render the verdict so against the great weight and
preponderance of the evidence as to be manifestly erroneous or unjust. 
          Breault’s second point of error is overruled.
$28,975 Credit
          In his third point of error, Breault asserts that the trial court erred by crediting
the full amount of Psarovarkas’s 19 $1,525.00 monthly payments against the principal
balance of the Gonzales Note without deducting interest.
          In its findings of fact, the court found that Psarovarkas made payments to
League City Bank & Trust (payment of the Gonzales Note) totaling $28,975.00. The
court then credited this full amount in calculating the total payments made by
Psarovarkas.
             When the parties do not agree otherwise, partial payments on an
interest-bearing obligation are ordinarily applied first to accrued interest, and the
balance is applied to principal. Cmty. Savings & Loan Assoc. v. Fisher, 409 S.W.2d
546, 550 (Tex. 1966); see Whalen v. Weaver, 464 S.W.2d 176, 180 (Tex.
App.—Houston [1st Dist.] 1970, writ ref’d n.r.e.). Here, there is no evidence of any
agreement of the parties regarding principal and interest. An amortization schedule
was signed in June of 1994; however, the schedule does not contain any provisions
regarding such terms. Therefore, we find that the trial court erred in crediting the
entire $28,975 to Psarovarkas. 
          We sustain Breault’s third point of error and reverse and remand with an
instruction to the trial court that Psarovarkas be credited only with that portion of his
payments properly allocated to principal and not to interest. 
$2,400 Credit
          In his fourth point of error, Breault asserts that the trial court erred by crediting
Psarovarkas with a $2,400.00 credit based on Breault’s “I.O.U.” Specifically, Breault
asserts that Psarovarkas is not entitled to the credit because (1) his pleadings will not
support the judgment, (2) he waived any right thereto in open court, and (3) the
condition precedent to Breault’s duty to pay never occurred.
          Because we have found that the Real Estate Note was tried by implied consent
and that both the Real Estate Note and the Renewal Note were in support of the same
transaction, we do not agree with Breault’s first point that the pleadings do not
support the judgment. Furthermore, Breault signed an “I.O.U.” on his own letterhead,
admitting that he owed Psarovarkas $2,400 and instructing Psarovarkas that he could
subtract the amount from the “Note.” 
          Breault also asserts that Psarovarkas waived any right to the $2,400 credit
during Psarovarkas’s testimony in open court. In support of this claim, Breault refers
to the following portion of Psarovarkas’s testimony as he was being questioned by
Breault’s attorney: 
Q.You don’t know of any sums of money that Mr. Breault owes
you, do you?
 
A.If Mr. Breault owes me money?
 
          Q.      Yeah.
 
A.I don’t want any money from Mr. Breault. I don’t even want the
$2400 that I paid taxes to Gonzales.
 
Q.All right. So that’s your testimony, you don’t want any sums of
money from Mr. Breault?
 
A.I don’t want no money from Mr. Breault. 
However, Psarovarkas also made the following statement immediately following the
last statement above, “I just want these people to leave me alone; so, I can work.” 
Additionally, during the next day of testimony while questioned by Psarovarkas’s
attorney, Psarovarkas made the following statements:
Q.. . . I think yesterday you were asked if you wanted all of this
money back that you had over paid. . . . (followed by an objection
and discussion) Did you know that you had over paid?
 
A.No, ma’am.
 
Q.Would you have sued Mr. Breault trying to get money back?
 
          A.      Of course.
 
          Q.      But you didn’t know?
 
          A.      No.
 
Q.Once he sued you and I figured it out, did you ask me then to see
if I could collect that?
 
          A.      Yes, ma’am.
 
Q.When you said that you didn’t want the money back, you just
wanted to work yesterday, did you mean that you wouldn’t have
sued for it to begin with because you didn’t know?
 
          A.      Yes, because I didn’t know.

In a nonjury trial, the judge is the trier of fact and it is his prerogative and
responsibility to weigh the credibility of the witnesses and the evidence. Cheek v.
Humphreys, 800 S.W.2d 596, 598 (Tex. App.—Houston [14th Dist.] 1990, writ
denied). We do not agree with Breault’s argument that Psarovarkas automatically
disclaimed his interest by making a quasi-admission against interest at trial. 
Considering all of the testimony, we find that the trial judge could have found that the
Psarovarkas did not disclaim his interest and was entitled to the credit. 
          Breault also asserts that Psarovarkas was not entitled to the $2,400 credit
because the condition precedent to Psarovarkas’s duty to pay never occurred. The
“I.O.U.” executed by Breault states as follows:
Psarovarkas: I OWE YOU $2,400 dollars. Yo [sic] You may subtract
this amount from your Note to me, or pay the full amount ,of [sic] the
note am [sic] Iwill [sic] reimburse you the $2400.

Breault’s argument that Psarovarkas was not entitled to the credit is based on the
claim that, because Psarovarkas did not pay the 1997 Renewal Note, Psarovarkas is
not entitled to the credit, and that, if any credit was due to Psarovarkas, it should have
been against the 1997 Renewal Note instead of the 1994 Real Estate Note. We
disagree. The “I.O.U.” does not designate that it applies only to payment of the 1997
Renewal Note—it merely refers to a note. Additionally, because we have found that
the Real Estate Note was tried by implied consent and Psarovarkas made payments
specifically towards the Real Estate Note, the $2,400 credit can be applied to the Real
Estate Note.
          We overrule Breault’s fourth point of error.
Evidentiary Hearing on Sanctions
           In his fifth point of error, Breault asserts that the trial court abused its
discretion by denying Breault the right to an evidentiary hearing on a post-trial
motion for sanctions. Breault sought to have Psarovarkas sanctioned for filing a
frivolous claim that required Breault to expend $1,900.00 in additional costs. In
support of his motion for sanctions, Breault cited “Defendant’s Original Answer,”
filed September 8, 1998, in which Psarovarkas asserted an affirmative defense of
fraud, stating that the signature on the Renewal Note was not his signature and the
notarization on the note was fraudulent. Because of Psarovarkas’s claim, Breault
hired an expert documents examiner to review the signature, expending $1,900.00 to
do so. Psarovarkas filed a “First Amended Answer and Counterclaim” less than a
month before trial, which deleted this affirmative defense. 
          Breault argues that Rule 13 of the Texas Rules of Civil Procedure requires a
trial court to hold an evidentiary hearing on a motion to award sanctions and that the
trial court abused its discretion by failing to hold such a hearing. We disagree with
Breault’s interpretation of Rule 13. Rule 13 requires a court that finds a violation of
Rule 13 to “upon motion or upon its own initiative, after notice and hearing, impose
an appropriate sanction.” Tex. R. Civ. P. 13. Thus, this rule requires a court to hold
a hearing prior to applying sanctions. The rule does not require a hearing prior to
denying sanctions. 
          The trial court did hold a hearing in response to Breault’s “Motion for New
Trial and Amended Motion to Modify Judgment” and “Motion to Rule for Costs and
Sanctions.” At the hearing, the trial court refused to hear arguments on sanctions and
excluded the evidence offered by Breault in support of his motion for sanctions. 
Whether the exclusion was a refusal to hold an evidentiary hearing or denial of
sanctions is not important, because, under Rule 13, a trial court is not required to hold
an evidentiary hearing prior to denying sanctions. Therefore, we find no abuse of
discretion and overrule Breault’s fifth point of error.
Psarovarkas’s Points of Error

Prejudgment Interest 

          In his first point of error, Psarovarkas complains that the trial court erred in
awarding prejudgment interest from the inception date of the Real Estate Note. The
trial court ordered that Breault recover from Psarovarkas, interest due on the Real
Estate Note from June 17, 1994, to August 28, 2000. Psarovarkas asserts that the
accrual date for prejudgment interest should be March 24, 1998, which is 180 days
from the date that Psarovarkas received notice of the claim, instead of June 17, 1994. 
          “Prejudgment interest is ‘compensation allowed by law as additional damages
for lost use of the money due as damages during the lapse of time between the accrual
of the claim and the date of judgment.’” Johnson & Higgins of Texas, Inc. v.
Kenneco Energy, Inc., 962 S.W.2d 507, 528 (Tex. 1998) (quoting Cavnar v. Quality
Control Parking, Inc., 696 S.W.2d 549, 552 (Tex. 1985)). The two legal sources for
an award of prejudgment interest are general principles of equity, and an enabling
statute. See id. Statutory provisions for prejudgment interest apply only to cases
involving claims of wrongful death, personal injury, property damage, and
condemnation. Lee v. Lee, 47 S.W.3d 767, 799-800 (Tex. App.—Houston [14th
Dist.] 2001, pet. denied) (citing Tex. Fin.Code Ann. §§ 304.102, 304.201). Because
the claims in this case do not fall within the statutory provisions, an award of
prejudgment interest in this case is governed by the common law. See Kenneco, 962
S.W.2d at 530.
          Under the common law, prejudgment interest begins to accrue on the earlier of
(1) 180 days after the date a defendant receives written notice of a claim or (2) the
date suit is filed. See id. at 531. A “claim” is a demand for compensation or an
assertion of a right to be paid. Id. Psarovarkas admits that the first date he received
notice of a claim would be the date he was approached by Breault with the Renewal
Note, which was September 25, 1997. Therefore, the appropriate date for
prejudgment interest to begin would be 180 days from September 25, 1997, which is
March 24, 1998.
          We sustain Psarovarkas’s first point of error and remand to the trial court for
the calculation of prejudgment interest.
Post-judgment Interest
          In his second point of error, Psarovarkas asserts that the trial court erred in
awarding post-judgment interest. Specifically, Psarovarkas contends that he
presented evidence that he made a full and unconditional tender of the amount of the
court’s judgment to Breault, prior to entry of both the first judgment on October 18,
2000 and the final modified judgment on December 28, 2000. 
          As Breault points out, a tender into the registry of the trial court of all sums due
under the judgment is a means of halting post-judgment interest. See St. Paul
Mercury Ins. Co. v. Billiot, 342 S.W.2d 161, 164 (Tex. App.—Beaumont 1960, writ
ref’d). However, another means of terminating post-judgment interest is
accomplished by making a timely, unconditional tender of payment of the judgment. 
See Trevino v. City of Houston, 695 S.W.2d 289, 291 (Tex. App.—Houston [1st Dist.]
1985, writ ref’d n.r.e.). A tender is an unconditional offer by a debtor to pay a sum
not less than the full amount due on a debt or obligation. Bray v. Cadle Co., 880
S.W.2d 813, 818 (Tex. App.—Houston [14th Dist.] 1994, writ denied). The burden
of proving a valid tender is on the party asserting it. Id. A formal tender is excused
when the creditor has indicated he is unwilling to accept what is due in discharge of
the debt. Strickland v. Coleman, 824 S.W.2d 188, 193 (Tex.App.—Houston [1st
Dist.] 1991, no writ). 
          Because there is no dispute that Psarovarkas did not offer a tender into the
registry of the court, we must decide whether Psarovarkas made a timely,
unconditional tender of payment of the judgment. Psarovarkas made his first offer
of tender on August 24, 2000 by facsimile letter. Although trial proceedings had
concluded on July 25, 2000, the court had not yet entered judgment. Psarovarkas’s
letter states, “[I]n conformity with the judgment you prepared for my signature I am
hereby offering to tender the full amount of the court’s judgment as follows . . . .” 
Because judgment had not yet been entered, and because we find no evidence in the
record to verify whether such tender was in conformity with the claimed judgment
prepared by Breault, we cannot find that Psarovarkas’s first offer was an
unconditional tender. Subsequently, the trial court entered judgment on October 18,
2000. Psarovarkas sent another offer of tender via letter facsimile on October 19,
2000, stating an offer to pay the court’s judgment on October 23, 2000. We find that
a comparison of the offer letter to the judgment demonstrates an unconditional tender
of payment in accordance with the judgment. Breault claims that the offer was not
an unconditional tender because it did not include post-judgment interest earned to
date of the proposed payment. We disagree. The offer letter clearly states that it
includes five days post-judgment interest from October 19 through October 23. 
          We sustain Psarovarkas’s second point of error and remand to the trial court
for deletion of the award of post-judgment interest. Conclusion
          We reverse that portion of the judgment that awards Breault $21,319 in actual
damages and remand that portion of the judgment to the trial court to determine the
proper allocation of principal to be credited against the balance of the Gonzales Note. 
We also remand the cause to the trial court for the purposes of re-calculating
prejudgment interest based on the dates as stated in this opinion. In addition, we
reverse that portion of the judgment that awards post-judgment interest and remand
the cause to the trial court for signing of a final judgment that awards no post-judgment interest. 
 
                                                                        Laura C. Higley 
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Higley.