

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00352-CV

**DEBORAH LONIS AND RUSSEL LONIS,**

          **Appellants**

**v.**

**BRANDON WALTON D/B/A BRANDED BUILDERS,**

          **Appellee**

**From the 77th District Court
Freestone County, Texas
Trial Court No. CV20342**

## MEMORANDUM OPINION

Deborah and Russel Lonis appeal from the trial court's take nothing judgment rendered after a trial before the court in their suit against contractor Brandon Walton doing business as Branded Builders. In four issues, the Lonises attack the sufficiency of the evidence to support the judgment. We affirm.

## Background

The Lonises bought an older home in November 2017. They knew when they purchased it that it had obvious foundation issues. Almost a year later, the Lonises hired Walton to work on their house. Although Walton and his crew did a considerable amount of work over a period of several months, the foundation continued to move, and the Lonises experienced additional problems. Eventually they sued Walton for violations of the Texas Deceptive Trade Practices Act, and for fraudulent inducement, negligence, negligent misrepresentation, negligent hiring, supervision, and/or management, and breach of contract.

The parties entered into a "Service Contract" on October 4, 2018, which addresses foundation repairs as well as some miscellaneous repairs. The "Foundation Repair" section listed the following tasks to be performed by Walton:

> All trash along with existing old gas lines under residence will be completely removed and discarded. "Note gas lines are no longer in use and main gas supply has be [sic] disconnected properly"
>
> Any damaged or rotten lumber will be removed, this includes floor joist [sic], outside main wall beams along with inner floor support beams.
>
> Existing undamaged beams will be reset and cut to fit tight through out [sic] foundation. Some beams may be removed and replaced due to improper cuts or short in lengths, these beams may be used in other areas if needed.
>
> Additional beams will be installed where required for proper support of residence.
>
> An additional 6" x 6" beam will be installed along main load bearing wall, this beam will be attached and secured from one side of residence to other providing required support. New concrete sets will be installed every 6 to 8 feet as required.

> All outside main wall beams along with inner floor support beams will have both 6" Headlok structural wood screws or 3" x 6" metal mending plates installed at all joints and notches.
>
> Residential home will be raised/lowered as needed throughout foundation to a level point. "Note throughout home small holes may be drilled inside near wall lines with flags providing low and high points. These small holes will be filled when finished." Existing damaged or improper blocking will be removed and discarded. New blocking will be installed correctly where needed.
>
> Some interior doors may need to be adjusted, this is included in the estimate.

The contract contained a provision stating that Branded Builders recommends allowing the foundation to settle for six months. It also provided that once the foundation has time to settle Branded Builders will return to make adjustments where needed free of charge. Further, the contract informed the homeowner that "Branded Builders warranties all work performed for 10 years. A detailed warranty may be presented upon request." Finally, the contract proclaims: "Branded Builders is a [sic] Insured and Bonded Company." The Lonises paid $9,802.20, the agreed upon amount for the services.

Walton and his crew worked at the Lonises' home in October and November 2018. On November 8, 2018, Deborah signed a document entitled "Satisfactory Agreement" which states that "all work has been fully completed" and "owner has agreed to final payment with complete satisfaction of work that was performed" at her home. However, six weeks later, Deborah saw changes in the home. Believing the home was no longer level, she contacted Walton. He re-leveled the house in March 2019. At that time, Deborah signed a Foundation Repair Verification. That document contained the

statement: "By residential owner signing this form owner is satisfied with work that has been completed." Unfortunately, after three or four months, the home displayed additional signs that the foundation was not level.

Deborah testified that, at that point, Walton told her he "could never get it right," and he was not going to do any more work on the house. Deborah testified that she spoke to another company about repairing the foundation. That company agreed to do the work for $19,500. She also obtained an estimate of $28,000 to cover all remaining necessary repairs.

Walton explained that he is a general contractor and has prior experience repairing foundations. Three months before the Lonises purchased the home, the previous owner asked him to look at it. Walton enumerated the many defects he saw at that time. He did not do any work for the previous owner. After the Lonises bought it, he inspected the house for them. He again described the numerous defects he saw, noting that changes had been made to the foundation since he had seen it the first time. Notably, the front left corner was sixteen inches too high.

Walton presented twenty-two photos of the Lonises' home that he took when they signed the contract, before he started any work. He described the problems illustrated in the pictures and said the previous owner of the house was responsible for the poor condition of the house. Walton testified that due to the age and condition of the house, it could never be leveled. He clarified that "[i]f you can get it within five degrees, ten

degrees, you're doing pretty good" but "[t]he house is going to move." He stated that it would take $40,000 to make this house perfect. But since it would not be reasonable to spend $40,000 on this house, he discussed with the Lonises that he could make the house livable, not perfect. He recommended the Lonises have the base foundation repairs completed and then remove and replace the flooring, subflooring, and floor joists. He understood that they planned to do a complete renovation.

Walton told the Lonises he could fix the foundation and drafted the agreement. He testified that he did all tasks listed in the contract under the "Foundation Repair" heading. He leveled the home and then made adjustments twice after that. After the work he did, the house was an acceptable quarter of an inch to three-eighths of an inch out of level. Walton testified that, "I did my work through the limitations and what they expected me to do." However, he admitted that the contract required him to remove all damaged wood including floor joists, and all of the floor joists needed to be replaced. Yet, he explained, he did not remove any floor joists because he would have to remove the floor, and the Lonises would have to leave the house. He stated that he met industry standards and that Branded Builders provides a ten-year warranty for all work performed. He testified that, as long as the Lonises have issues with the work he did on their foundation, he will come back and fix it "under certain stipulations" in the warranty. He provided them a copy of the warranty when the work was completed "to give them an idea of what we do stand behind and what we don't stand behind."

Walton testified that during his last conversation with Russel, who was agitated, Russel made comments that Walton took as threats. As a result, Walton did not feel safe enough to return to the Lonises' home. The Lonises introduced forty pictures taken in May 2021 by someone they asked to look at their foundation. When shown those pictures, Walton identified numerous plates, blocks, shims, and wedges that had been moved, added, or altered since the last time he worked on the home. He also noted an area where new spray foam had been added. However, Deborah denied having anyone do any work on the foundation after Branded Builders worked on it in March 2019.

The case was submitted to the court without a jury. The trial court found that the Lonises did not prove by a preponderance of the evidence that Walton, doing business as Branded Builders, violated the Texas Deceptive Trade Practices Act or committed fraudulent inducement, negligence, negligent misrepresentation, or negligent hiring, supervision, and/or management. The trial court found that Walton breached the contract by not replacing damaged or rotten floor joists. However, it also found no evidence establishing what floor joists were damaged or rotten and insufficient evidence that the failure to replace any damaged or rotten floor joists caused the damages complained of. Therefore, the court found Walton was not liable for breach of contract. The court rendered a judgment that the Lonises take nothing against Walton, doing business as Branded Builders. This appeal ensued.

**Sufficiency of the Evidence**

In their first three issues, the Lonises assert the evidence is legally and factually sufficient to show that Walton, doing business as Branded Builders, violated the Texas Deceptive Trade Practices Act and made material false representations and negligent misrepresentations. In their fourth issue, they contend the "trial court erred in finding that no evidence existed that [they] suffered any damages" due to Walton's breach of contract. They assert that Walton's failure to continue to make repairs to their foundation caused additional damage to their home, requiring an additional $47,500 to repair. Further, they contend they were harmed by not receiving the benefit of a fixed foundation, replaced floor joists, a ten-year warranty, and insurance coverage.

STANDARD OF REVIEW

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Anderson v. Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review the trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party attacking the legal sufficiency of the evidence supporting an adverse finding on an issue on which the party bore the burden of proof must demonstrate all

vital facts in support of the issue were established as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The analysis requires that we first examine the record in the light most favorable to the verdict for some evidence supporting the finding, crediting evidence favoring the finding if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). We must indulge every reasonable inference that would support the verdict. *Id*. at 822. Some evidence, meaning more than a scintilla, exists when the evidence supporting the finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

If, however, no evidence appears to support the finding, we then examine the entire record to determine whether the contrary proposition is established as a matter of law; the issue will be sustained only if the contrary proposition is conclusively established. *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 557 (Tex. 2015); *Francis*, 46 S.W.3d at 241. A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *See City of Keller*, 168 S.W.3d at 814-16.

When considering a factual sufficiency challenge, we consider and weigh all of the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). An appellant attacking factual sufficiency with respect to an adverse finding on which he had the burden of proof

must demonstrate that the finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 242. We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool*, 715 S.W.2d at 635. We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998). In a bench trial, the trial court may resolve any inconsistencies in the testimony as well as determine the weight of the evidence. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

CAUSES OF ACTION

The Texas Deceptive Trade Practices Act grants consumers a cause of action for false, misleading, or deceptive acts or practices. TEX. BUS. & COM. CODE ANN. §§ 17.46, 17.50; *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

The DTPA provides:

> (a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:
> (1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:
> (A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and
> (B) relied on by a consumer to the consumer's detriment;

TEX. BUS. & COM. CODE ANN. § 17.50(a).[1]  Thus, to establish a DTPA claim under subsection 17.50(a)(1), the plaintiff must produce evidence that: (1) he was a consumer; (2) the defendant engaged in at least one of the "laundry list" items enumerated in Section 17.46(b); (3) he detrimentally relied on the false, misleading, or deceptive act or practice; and (4) the false, misleading, or deceptive act or practice was a producing cause of his injury.  *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Fraudulent inducement is a species of common-law fraud that arises only in the context of a contract.  *IBM v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019).  A fraudulent-inducement claim requires proof that: (1) the defendant made a material misrepresentation; (2) the defendant knew at the time that the representation was false or made it recklessly without any knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury.  *Id*.

To prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (1) a representation made by a defendant in the course of its business or in a

---

[1] On appeal the Lonises complain about two of the deceptive acts or practices enumerated in 17.46(b): (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; and (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.  *See id*. § 17.46(b)(2), (5).

transaction in which it has a pecuniary interest; (2) the representation conveyed false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *JPMorgan Chase Bank. N.A. v. Orca Assets G.P, L.L.C.*, 546 S.W.3d 648, 653-54 (Tex. 2018).

The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained as a result of the breach. *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied). The last element encompasses a causation requirement. *Velvet Snout, LLC v. Sharp*, 441 S.W.3d 448, 451 (Tex. App.—El Paso 2014, no pet.).

**Causation**

Causation is an essential element of each of the Lonises' theories of liability. To prevail on a claim under the DTPA, a plaintiff must prove that a violation of the statute was a producing cause of the injury. *Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex. 2004). Proximate cause is the causation standard applicable to claims of negligent misrepresentation and fraudulent inducement. *See Defterios v. Dallas Bayou Bend, Ltd.*, 350 S.W.3d 659, 664 (Tex. App.—Dallas 2011, pet. denied) (regarding fraudulent inducement); *Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 250 (Tex. App.—Waco 2001, pet. denied) (regarding negligent misrepresentation). Both producing cause

and proximate cause require proof of causation in fact. *Alexander*, 146 S.W.3d at 117. The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred. *W. Inv., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). Cause in fact cannot be established by "mere conjecture, guess, or speculation." *Id*.

A loss results from a breach of contract if the loss is the natural, probable, and foreseeable consequence of the breach. *Mead v. Johnson Grp., Inc.*, 615 S.W.2d 685, 687 (Tex. 1981). The absence of this causal connection between the alleged breach and the alleged damages will preclude recovery. *Prudential Sec., Inc. v. Haugland*, 973 S.W.2d 394, 397 (Tex. App.—El Paso 1998, pet. denied).

The evidence shows that, pursuant to the contract, Walton removed trash, old gas lines, damaged or rotten lumber, and beams with improper cuts or lengths. He reset, cut, replaced, installed, and secured beams as required. Further, he installed new concrete sets. Moreover, the evidence shows that Walton leveled the house within an acceptable amount "out of level." When the work was completed, Deborah signed a document saying she was completely satisfied with the work. A few months later, after Walton did additional work on the house, Deborah signed another document saying she was satisfied with the work. Walton testified that the foundation could be improved but the house would continue to move.

Walton provided pictures and descriptions of the deficiencies in the foundation as of the date he contracted with the Lonises. He also identified the deficiencies and irregularities shown in pictures taken two years after he worked on the home. He explained that the pictures show substantial changes that occurred since 2019 when he stopped working on the house. Deborah testified, over objection, that repairing the house now would cost nearly fifty thousand dollars.

After considering the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, we conclude that the record supports the trial court's findings of no liability. *See City of Keller*, 168 S.W.3d at 807. While the evidence shows the condition of the house has deteriorated since Walton worked on it, there is no evidence connecting Walton's acts or omissions to the condition of the house after March 2019. Even assuming Deborah's damage estimate is admissible and accurate, there is no evidence that any act or omission by Walton was a substantial factor in bringing about the Lonises' damages. *See Urena*, 162 S.W.3d at 551. It would be pure conjecture to say that any work Walton did pursuant to the contract, or the fact that he did not do any work after March 2019, caused the damages illustrated in the pictures taken in 2021 or described by Deborah. As there is no evidence of causation, the Lonises cannot prevail on their causes of action for negligent misrepresentation and fraudulent inducement, or their DTPA claim. *See Alexander*, 146 S.W.3d at 117.

Walton admitted that the contract required him to replace damaged floor joists, they were all damaged, and he did not replace any of them. The trial court specifically found that the evidence is insufficient to prove that Walton's failure to replace the floor joists caused the damages complained of. The record supports that finding as there is no evidence showing a causal connection between the failure to replace the floor joists and any of the damages the Lonises experienced after March 2019. *See Haugland*, 973 S.W.2d at 397. Accordingly, the Lonises cannot recover on their breach of contract claim.

## Conclusion

Because the Lonises did not prove the causation element of their theories of liability, they did not show that all vital facts in support of their issues were established as a matter of law. *See Francis*, 46 S.W.3d at 241. Also, they did not demonstrate that the trial court's findings are against the great weight and preponderance of the evidence. *See id*. at 242. Therefore, there is legally and factually sufficient evidence to support the trial court's findings that Walton is not liable for violations of the DTPA, or for fraudulent inducement, negligent misrepresentation, or breach of contract. We overrule issues one through four.[2]

We affirm the trial court's judgment.[3]

---

[2] Walton raises one cross-point regarding a ruling on admissibility of damage estimates. Due to our disposition of the Lonises' issues, we need not reach Walton's cross-point. *See* Tex. R. App. P. 47.1.

[3] All pending motions are dismissed as moot.

STEVE SMITH
Justice

Before Justice Gray,
      Justice Johnson, and
      Justice Smith
Affirmed
Opinion delivered and filed September 21, 2023
[CV06]

